**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary S. STEVENS,**
**Defendant–Appellant.**

**No. 88–4038.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 15, 1990.

James M. Russ, Orlando, Fla., for defendant-appellant.

Bruce Hinshelwood, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before CLARK, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

RONEY, Senior Circuit Judge:

In this criminal conspiracy case, we hold that a sole stockholder who completely controls a corporation and is the sole actor in performance of corporate activities, cannot be guilty of a criminal conspiracy with that corporation in the absence of another human actor. We therefore reverse the conspiracy conviction of defendant Gary S. Stevens. Determining no error in the district court's jury instructions, its order of restitution, and its imposition of statutory special assessments on each conviction, we

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

affirm the convictions and sentences on multiple counts of presenting false claims to a federal agency,[1] making false statements to a federal agency,[2] and defrauding federally insured banks.[3] The indictment alleged the following scheme: Stevens formed four separate corporations in the state of Florida for the purpose of performing government contract work. The corporations entered into a government contract with the U.S. Navy to build an automated storage and retrieval system at the Portsmouth Naval Shipyard in Kittery, Maine. The contract provided for periodic progress payments from the Government as designated aspects of the project were completed.

Stevens was the sole shareholder of these corporations and exercised sole control over them. He was also the only agent of the corporations who executed forms relating to these contracts. Stevens misrepresented that certain work had been performed in several requests for progress payments. Stevens applied for both personal and commercial loans at several federally insured banks, duplicitously listing as security the income derived from this contract.

■ The jury focused on the issue, presented by this appeal, concerning the alleged conspiracy between Stevens and his corporations. During deliberations, it submitted several written questions to the district court, including the following:

> CAN A PERSON CONSPIRE WITH HIS OWN CORPORATION, REALIZING THAT HE IS THE PRIMARY (ONLY) AGENT OF HIS OWN CORPORATION?
> CAN WE HAVE A DEFINITION OF CONSPIRACY AS IT APPLIES TO WHOLLY OWNED CORPORATION?

The district court judge responded in writing that a person was legally able to conspire with his wholly owned corporation, and that the general definition of conspiracy applies to both humans and corporations.

Although a conspiracy under 18 U.S.C.A. § 371 requires an agreement between two or more persons,[4] we have held that a corporation may be held criminally liable under § 371 when conspiring with its officers or employees. In so holding, we rejected the "single entity" theory that all agents of a corporation engaging in corporate conduct form a single, collective legal person—that is, the corporation—and that the acts of each agent constitute the acts of the corporation.[5] The single entity theory shielded intracorporate associations of individuals from conspiracy liability on the rationale that a corporation cannot conspire with itself any more than a private individual can.

Distinguishing the antitrust context in which the single entity theory first arose,[6] this Court decided that in the context of a criminal conspiracy to defraud the Government, the single entity theory contravened "the underlying purpose that led to the creation of the fiction of corporate personification. It originated to broaden the scope of corporate responsibility; we will not use it to shield individuals or corporations from criminal liability." *United States v. Hartley*, 678 F.2d 961, 972 (11th Cir.1982) (citing *United States v. Wise*, 370 U.S. 405, 417, 82 S.Ct. 1354, 1362, 8 L.Ed.2d 590, 598 (1962) (Harlan, J., concurring), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983)).

*Hartley* makes two important holdings in the field of intracorporate conspiracy. *First*, it holds that a group of conspirators

---

1. 18 U.S.C.A. § 287.

2. 18 U.S.C.A. § 1001.

3. 18 U.S.C.A. §§ 1014, 1344.

4. *United States v. Elkins*, 885 F.2d 775, 781 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990); *United States v. Hollifield*, 870 F.2d 574, 577 (11th Cir.1989) (per curiam).

5. *United States v. Hartley*, 678 F.2d 961, 968–72 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

6. *See, e.g., Nelson Radio & Supply v. Motorola*, 200 F.2d 911, 914 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

cannot escape conspiracy responsibility merely because they all act on behalf of a corporation. *Second, Hartley* holds that liability for a conspiracy may be imputed to the corporation itself on a respondeat superior theory.

> The [corporate] fiction was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identity of the other. We decline to expand the fiction only to limit corporate responsibility in the context of the criminal conspiracy now before us.
>
> ... In these situations, the action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose.

678 F.2d at 970 (internal quotation marks omitted, citation omitted).[7]

In this case, we confront a different situation: there is only one human actor, acting for himself and for the corporate entity which he controls. In the great majority of reported decisions involving intracorporate conspiracies under § 371, there were multiple human conspirators in addition to the corporate coconspirator.[8] Some cases have expressly indicated that multiple actors must be involved.[9]

The argument that a single human actor can be convicted of conspiracy under § 371 under the circumstances of this case flies in the face of the traditional justification for criminal conspiracies. Conspiracy is a crime separate from the substantive criminal offense which is the purpose of the conspiracy. This separate punishment is targeted not at the substantive offenses themselves, but at the danger posed to society by combinations of individuals acting in concert.

> This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Callanan v. United States,* 364 U.S. 587, 593–94, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961) (footnote omitted).

The threat posed to society by these combinations arises from the creative interaction of two autonomous minds. It is for this reason that the essence of a conspiracy is an *agreement.* The societal threat is of a different quality when one human simply uses the corporate mechanism to carry out his crime. The danger from agreement does not arise.

---

7. *See United States v. Am. Grain & Related Indus.,* 763 F.2d 312, 320 (8th Cir.1985) ("a corporation can be convicted of criminal conspiracy for the acts of two or more of its agents 'conspiring together on behalf of the corporation' ").

8. *See, e.g., Am. Grain & Related Indus.,* 763 F.2d 312; *U.S. v. Peters,* 732 F.2d 1004 (1st Cir.1984); *United States v. S & Vee Cartage Co., Inc.,* 704 F.2d 914 (6th Cir.), *cert. denied,* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *United States v. Consolidated Coal Co.,* 424 F.Supp. 577 (S.D.Ohio 1976). *Contra United States v. Car-*

*roll,* 144 F.Supp. 939, 941–42 (S.D.N.Y.1956) (dismissing charge of conspiracy to violate federal law relating to possession of gold during wartime against corporation and its controlling human agent on grounds that such a theory "over-extend[ed] the fiction of corporate responsibility").

9. *United States v. Peters,* 732 F.2d 1004, 1008 n. 6 (1st Cir.1984) ("A corporate officer, acting *alone* on behalf of the corporation, could not be convicted. of conspiring with the corporation.") (dicta) (citation omitted).

Even if it can be said that Stevens made up his mind as an individual to pursue fraudulent ends and at the same time made up the "minds" of his corporations to pursue these same ends, this case lacks any interaction between multiple autonomous actors. The basis for punishing Stevens for the separate offense of conspiracy, in addition to the substantive offenses he committed, is not present in this case.

Although it takes three incorporators to form a corporation in Florida, the Government does not assert that the incorporators, other than Stevens, were in any way involved in the criminal objective.

We accordingly reverse Stevens's conviction for conspiracy under § 371.

## JURY INSTRUCTIONS

Contrary to Stevens' contention, the district court's charge as a whole clearly instructed the jury that specific intent was an element of all offenses charged in the indictment, including the false statement counts. The court also defined the meaning of "false and material" for the jury, albeit not at the specific juncture requested by the defendant. The instructions substantially covered the points involved in Stevens's proposed instructions. *See United States v. Williams,* 875 F.2d 846, 852 (11th Cir.1989).

## RESTITUTION

■ In addition to incarceration, the district court sentenced Stevens to make restitution to the United States Navy and to the three banks involved in the case. In his objections to the presentence report and at the sentencing hearing, Stevens disputed the amounts of the alleged damages suffered by the Navy and by the banks. Stevens also stressed his current state of indigency. After argument on this issue at the sentencing hearing, the district court stated:

All right. Mr. Stevens, let me first address the problem of restitution. The court of course realizes that you are unable at this time to make any restitution, so anything would have to be in the future. The amounts stated in the presentence report are [$154,741.09] to the Southeast Bank, [$1,039,810.50] to the Portsmouth Naval Shipyard; [$921,-840.72] to the Sun Bank; and [$327,-672.19] to the First National Bank of Central Florida.

The court can somewhat agree with [your attorney] that some of these amounts may be inflated as to the specific fraud charges and what the court is going to do in this respect is that any amounts from these parties which are reduced to judgment, of course, will prevail and those will be the amounts due. In absence of any judgment, the court will order that one half of those stated amounts be made as restitution in this case.

Stevens contends that the district court failed to adequately explain its reasons for this restitution order, as required by the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C.A. § 3579(a)(2). This Circuit has recently established the standard for determining when district courts imposing restitutionary sentences must articulate their reasons and factual bases for the order.

The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned.

*United States v. Hairston,* 888 F.2d 1349, 1353 (11th Cir.1989) (quoting *United States v. Patterson,* 837 F.2d 182, 183–84 (5th Cir.1988)).[10]

---

**10.** *See also United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986) (per curiam) (amount may be established through proof at trial, admission, or other judicial determination) (citations omitted), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987).

In our judgment, the record does provide an adequate basis for review of the amount of the restitution ordered by the court. By reducing the ordered restitution to one half of the amounts shown in the presentence report, the district court avoided the necessity of determining what would be appropriate if full restitution was to be ordered. Therefore, the record need not permit a finding as to that amount, but is sufficient if it supports the amount actually ordered. Although the Government concedes that certain amounts for interest and attorney's fees were wrongfully included in the total amounts shown, there is no suggestion that the exclusion of these amounts would reduce the figure that could be ordered to less than the amount actually ordered.

Stevens argues that the district court failed to consider the impact of parallel civil actions by his victims to collect the same damages as were involved in the restitution order. If a victim has recovered losses through civil proceedings against the defendant, then the district court may not order restitution in these amounts. Section 3579(e)(1). Stevens has not identified any such recoveries on this appeal, however, and it is apparent from the court's statement that he is free to present to the district court evidence of such civil judgments as would bear upon the issue of restitution.

■ Stevens argues that because the period for restitution was not specified by the Court, restitution is required to be made immediately. The Government agrees with this. At the time of sentencing, the defendant made the following statement:

> I know the results of my acts, and I wish to make restitution. I wish to do whatever is necessary to fulfill my obligations as a citizen of the United States.

The district court recognized that Stevens would not be able to make restitution at the time of sentencing. Although ability to pay restitution must be considered by the court, § 3580(a), the defendant bears the burden of proving his financial condition. § 3580(d). A defendant's indigency at the time of sentencing is not a bar to an order of restitution under the VWPA.[11] The court may permissibly order less than full restitution on the basis of the defendant's inability to pay.[12]

If appropriate, the district court may require restitution to be made within a specified period or in specified installments. § 3579(e)(2). With this provision, Congress apparently sought to reconcile concerns about ordering indigent defendants to make restitution with the other purposes underlying the Act.[13]

Stevens is always free to return to the district court to seek a modification of the restitution order based on these factors.

## SPECIAL ASSESSMENT

The district court imposed a special assessment of $50.00 for each felony conviction under 18 U.S.C.A. § 3013. Stevens contends that § 3013 is unconstitutional on the grounds that it was a bill for raising revenue that was originally introduced in the Senate. This argument has now been foreclosed by the decision of the United States Supreme Court in *United States v. Munoz–Flores*, —— U.S. ——, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990).

## SUMMARY

We reverse Stevens's conviction for conspiracy to defraud the Government, and affirm his other convictions, the district court's order of restitution, and the imposition of special assessments for each conviction under § 3013.

---

**11.** *See United States v. Owens,* 901 F.2d 1457 (8th Cir.1990); *United States v. Ryan,* 874 F.2d 1052, 1054 (5th Cir.) (citing cases), *cert. denied,* —— U.S. ——, 109 S.Ct. 1138, 103 L.Ed.2d 199 (1989).

**12.** *Hughey v. United States,* —— U.S. ——, ——, 110 S.Ct. 1979, 1982–84, 109 L.Ed.2d 408 (1990); *United States v. Atkinson,* 788 F.2d 900, 902–04 (2d Cir.1986). *See also United States v. Pollak,* 844 F.2d 145, 155–56 (3d Cir.1988) (noting effect of defendant's ability to pay on issue of whether district court abused its discretion in imposing sentence).

**13.** *See United States v. Bruchey,* 810 F.2d 456, 459–61 (4th Cir.1987) (discussing limitations on durational aspects of restitution sentences).

REVERSED in part and AFFIRMED in part.