**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Douglas M. HINTZMAN,**
**Defendant–Appellant.**

**No. 90–2229.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1990.

Decided July 19, 1991.

Chris R. Larsen, Steven M. Biskupic, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Terry W. Rose, Rose & Rose, Kenosha, Wis., for defendant-appellant.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Defendant-appellant Douglas M. Hintzman appeals the district court's sentence for concealing material facts from the Department of Health and Human Services and the Department of Housing and Urban Development in violation of Title 18 U.S.C. § 1001. On appeal, the defendant alleges that the district court erred in its calculation of the amount of $21,960 loss incurred by the government for sentencing purposes, and in determining that he obstructed justice. We affirm the sentence of the district court.

## I. FACTS AND DISPOSITION BELOW

On December 12, 1989, a federal grand jury returned a two-count indictment charging the defendant with concealing a material fact in violation of Title 18 U.S.C. § 1001: Count One charged the defendant with a scheme to conceal his true employment activity from the Department of Health and Human Services and Count Two charged a scheme to conceal his employment from the Department of Housing and Urban Development. The defendant was arraigned and entered pleas of not guilty to each count. The case went to trial on March 12, 1990.

The government established through testimony and exhibits that the defendant received benefits from the Department of Health and Human Services ("Social Security Administration") and the Department of Housing and Urban Development ("HUD"): The Social Security Administration benefits began in 1969, were stopped in 1973, were reinstated in 1975, and were terminated again in 1989; the HUD benefits ran from 1981 through 1988. The defendant had a history of mental illness.[1] His eligibility, as well as the amount of the benefits from the respective agencies, was determined on the basis of his income. Thus, he was required to give notification of any change in employment status and income status.

When the defendant started to work for the Cudahy School District as a janitor in October of 1985 he began concealing his employment status from the government agencies. He later obtained employment with Milwaukee County as a custodian and then as a security guard. The defendant again neglected to disclose this employment to the Social Security Administration and HUD by failing to accurately complete various forms as required by the agencies. Thus, the defendant's failure to report this income allowed him to fraudulently receive $17,910.20 from the Social Security Administration, and $4,050.00 from HUD.

In January of 1989, the defendant was confronted by Charles Constantine, a Special Agent with the Office of the Inspector General for the Department of Health and Human Services in Milwaukee. Agent Constantine met with the defendant in January of 1989 and again in June of the same year to interview him about his failure to accurately report his employment. Agent Constantine testified that the defendant gave at least three different versions for his failure to disclose his work history with the Cudahy School District and Milwaukee County. In addition, Agent Constantine testified that the defendant told him that "the average man in the street would believe him" because he was a "straight guy," and that he would not be sent to jail "because of [his] history of mental problems." However, the record reveals that the defendant had a long history of contacting these agencies regarding his employment status, even disclosing a job he held for just one week.

After his first meeting with Agent Constantine, the defendant called the Social Security Administration Office in early February of 1989 and advised the agency that he was employed full time with Milwaukee County. He did not mention that he had recently been contacted by criminal investigators and that he had been working more than three years prior to the call. Despite this phone call, the defendant continued to receive benefits from the Social Security Administration through direct deposit until July of 1989 due to an administrative error. At the time the defendant placed the call to the Social Security Administration to report that he was working full time, the defendant's HUD benefits had ceased.

The defendant testified on his own behalf and denied that he had ever concealed his employment status from either the Social Security Administration or HUD. The defendant gave as an excuse for his failure to inform the respective agencies that someone had told him that he should wait a year before reporting his work. The jury returned verdicts of guilty on both counts.

A Presentence Report recommended that the court find that the total loss involved in the defendant's failure to report his income was $21,960.20. The Report also recommended that the defendant receive a two-level enhancement under the Sentencing Guidelines for obstruction of justice pursuant to § 3C1.1 of the Guidelines. The defendant objected to both of these recommendations. At the sentencing hearing on May 18, 1990, the district court accepted the recommendations in the Presentence Report, finding that the total amount of loss was $21,960.20 and that a two-level increase for obstruction of justice was ap-

---

1. He was diagnosed as being schizophrenic in 1960. Nonetheless, the defendant graduated with honors from the University of Wisconsin–  Milwaukee in 1965 with a Bachelor's of Science degree in geography.

propriate. The district court sentenced the defendant to 15 months imprisonment on each count, to run concurrent with each other. The defendant appeals his sentence.

## II. ISSUES FOR REVIEW

On appeal, the defendant contends that (1) the district court erred in determining for sentencing purposes the amount of loss incurred by the government as a result of his scheme to conceal his employment activity and (2) the court also erred in finding that the defendant obstructed justice when offering several different explanations concerning why he failed to disclose his actual work history.

## III. DISCUSSION

### A. Amount Of Loss

■ Section 2F1.1(a) of the Sentencing Guidelines requires an offense level of six for violation of Title 18, U.S.C. § 1001. At the time of the defendant's Sentencing Hearing, under § 2F1.1(b)(1)(E), a four-level enhancement was applied if the loss was between $20,001 and $50,000.[2] The district court determined the amount of loss sustained by the government resulting from the defendant's scheme to conceal his employment was $21,960.20; thus, the district court added four levels to the defendant's offense level.

The defendant argues on appeal that the amount of loss should be determined with a cutoff date of February 1989, because he placed the call to the Social Security Administration on that date to inform the agency he had been working full time. He argues that despite this call, he continued to receive and accept benefits from the Social Security Administration through direct deposit until July of 1989. Thus, he alleges any amounts he received after the phone call in February of 1989 were the result of administrative errors on the part of the government and not because of any criminal activity on his part. According to the defendant, a cutoff date of February

would result in a reduction in the "amount of loss" of approximately $2,000.00 to a total amount under $20,000.00, resulting in only a three-level increase under § 2F1.1(b)(1) of the Guidelines, rather than the four-level increase imposed by the district court. The district court rejected this argument specifically finding that even though the defendant notified the agency of the change in his employment situation, the fact remained that "when he received the checks, instead of returning them to Social Security which any reasonable person ought to have done, he continued to convert them to his own use in the manner that he had been accustomed to throughout the entirety of the period ... [and] he did nothing to ensure that these monies would no longer be received and utilized."

■ The district court's determination of the amount of money the defendant wrongfully received from the agencies is a finding of fact and is accepted on appeal unless the finding is clearly erroneous. *United States v. Guerrero*, 894 F.2d 261, 265 (7th Cir.1990). Sentencing Guideline § 2F1.1 covers offenses involving fraud or deceit. It begins with a base offense level of six which can be increased depending on the dollar value of the loss involved in the criminal conduct. "Loss" under § 2F1.1 incorporates the definition of loss discussed in the Commentary to § 2B1.1. The Commentary to § 2B1.1 defines "loss" as "the value of the property taken, damaged, or destroyed." "The interpretation of 'loss' under § 2B1.1 of the Guidelines is a question of law." *United States v. Burns*, 894 F.2d 334, 335 (9th Cir.1990).

It is obvious to this court that the defendant continued to "take" money from the Social Security Administration after his February of 1989 telephone call. Even though the defendant had knowledge that the money was continuing to be deposited directly into his account due to an administrative error on the part of the Social Security Administration, the defendant did nothing to alert the agency of the problem

---

**2.** Section 2F1.1(b)(1) was subsequently amended to provide for a four-level enhancement if the loss is between $20,001 and $40,000.

and continued to convert the funds to his own use for a period of five months. The defendant cannot claim that he did not know that he was not entitled to the funds, given the information he received during his conference with Agent Constantine just one month earlier when he was confronted with evidence of his wrongdoing. Thus, the district court properly determined the total loss to the government as a result of the defendant's fraudulent activities to be $21,960.20. Therefore, a four-level increase in the defendant's offense level was warranted.

## B. Obstruction Of Justice

The defendant next argues that the district court erred in imposing a two-level increase under § 3C1.1 of the Guidelines for obstruction of justice. Section 3C1.1 provides for a two-level increase if a "defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." The Notes to § 3C1.1 make clear that "testifying untruthfully" at trial can provide the basis for applying an obstruction of justice adjustment. Application Note 1(c), Sentencing Guidelines § 3C1.1. At the Sentencing Hearing, the district court commented on the defendant's inconsistent statements both in the investigative stage and at trial:

> "Insofar as the matter of obstruction of justice is concerned, I have considerable degree of concern. Obviously under our system of justice no defendant has an obligation to take the stand in any trial and give testimony; but once a defendant does take the stand, he has an obligation or she has an obligation as any other witness to provide truthful testimony.

> "And it may well be that in Mr. Hintzman's mind that he believed that he was giving what he believed to be truthful testimony; but that, frankly, totally undermines the reality of what the operative facts were here. And to say, I'm telling the truth, in the face of overwhelming evidence to the contrary totally undermines the credibility of the wit-

ness to the point where, as I've indicated, the jury spoke loud and clear and rejected almost out of hand Mr. Hintzman's explanation that he gave from the witness stand.

> "And I suggest from the totality of the evidence that that explanation was given solely to ameliorate the feelings of the jury and evoke a certain degree of sympathy in returning a verdict of not guilty, and the jury unquestionably rejected Mr. Hintzman's approach to his defense of this case.

> "And I think from the record that was made both on direct and cross-examination of Mr. Hintzman's testimony that it goes beyond the sheer matter of the testing of the credibility of one witness as against the government's witnesses, including the government's witnesses who recounted Mr. Hintzman's numerous contacts with the agency during the investigative stages of this case.

> "And when he realized that he was unable to convince them at that stage, he waited until the courtroom dynamic presented yet another opportunity for him to unveil yet another explanation of all of this which I think in toto goes beyond the simple test of credibility of the defendant as against the witnesses produced by the government.

> "And on the basis of the record made at trial and Mr. Hintzman's comments to the probation department in this regard, I have no hesitancy in concluding that not only has Mr. Hintzman not accepted responsibility for his actions with regard to this criminal conduct, but he went beyond all bounds of propriety in attempting to con this jury into accepting a version that just flew in the face not only of the other facts of the case but reality.

> "So I reject the defendant's position with regard to the matter of the enhanced scoring for obstruction of justice and will as part of the guideline computations here include the two-point enhancement under guideline 3C1.1."

The district court's determination that the defendant obstructed justice is "a finding of fact ... [t]hus, our review is under a

clearly erroneous standard." *United States v. Brown*, 900 F.2d 1098, 1103 (7th Cir.1990) (citing *United States v. Franco-Torres*, 869 F.2d 797, 800 (5th Cir.1989)).

The record reveals that the defendant gave at least three different versions to Agent Constantine in an attempt to explain his failure to disclose his Cudahy School District and Milwaukee County employment: Initially, the defendant stated that he reported his income accurately; secondly, when the falsity of his first statement was shown, the defendant said he did not know why he did not report his income; and third, the defendant stated that he knew if he properly reported his income, his benefits would be cut. The defendant later changed his story at trial when he testified that he truthfully disclosed his employment even though the evidence overwhelmingly established that until February of 1989 he had not told Social Security or HUD officials that he had been working since at least 1985 for the Cudahy School District. In an apparent attempt to stretch the imagination of the jury, the defendant contended he had no responsibility to report this work, in spite of a reporting history that included disclosing a job he held for only a week. Thus, the district court finding was not clearly erroneous when determining that the defendant attempted to "con" the jury. Thus, the two-level enhancement for obstruction of justice is appropriate.

## IV. CONCLUSION

The decision of the district court is AFFIRMED.