## UNITED STATES of America, Plaintiff-Appellee,

v.

## Everett Woodrow WILSON, Defendant-Appellant.

### No. 92-5308.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 26, 1992.

Decided Nov. 23, 1992.

William Carlton Ingram, Jr., Floyd, Allen & Jacobs, Greensboro, N.C., argued, for defendant-appellant.

Harry L. Hobgood, Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before PHILLIPS, WILKINS, and WILLIAMS, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Everett Woodrow Wilson pled guilty to making a false statement to a financial institution, the North Carolina National Bank (NCNB). 18 U.S.C.A. § 1014 (West Supp.1992). Wilson appeals his sentence, arguing that the district court erred in calculating the amount of the loss incurred as a result of his criminal activity. United States Sentencing Commission, *Guidelines Manual*, U.S.S.G. § 2F1.1(b) (Nov.1991). He also contends that the district court improperly computed his Criminal History Category. We find that Wilson's Criminal History Category was properly calculated; however, because the record is insufficient to permit a determination of whether loss was correctly calculated, we remand for resentencing.

### I.

In 1988 Wilson was employed by David Post. In order to purchase Vintage Woods, a small furniture company, Wilson and Post entered into negotiations with NCNB to secure a loan. The negotiations resulted in two loans from NCNB to Vintage Woods totaling $292,000 with Post acting as a guarantor and the assets of Vintage Woods pledged as security. Wilson was named president of Vintage Woods and was responsible for maintaining its financial records. The terms of the loan agreements required Vintage Woods to file monthly financial statements so that NCNB could keep abreast of its financial condition.

With one exception, Wilson did not file the necessary monthly financial statements until after Vintage Woods began to fail. Approximately seven months after the loans were made, Wilson, responding to repeated requests from NCNB for the required financial information, provided a false financial statement. This statement, which was the basis for Wilson's prosecution, misrepresented that Vintage Woods had accounts receivables totaling $101,309.90, when the actual total was only $24,000. After Post learned of Vintage Woods' decline, he notified NCNB that Wilson had falsely represented Vintage Woods' financial condition. When Vintage Woods finally ceased production, there was an out-

standing balance owed to NCNB of $275,-989.70, plus interest. NCNB sued Post for the balance, and these parties eventually settled when Post paid $125,000 to NCNB.

NCNB eventually liquidated· Vintage Woods' assets, generating a total, when combined with receivables, of $41,682.41. The pre-sentence report recommended increasing Wilson's base offense level of six by eight levels because the alleged loss caused by his false statement was more than $200,000 but less than $350,000.· *See* U.S.S.G. § 2F1.1(b)(1)(I). It also recommended a two-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), for an adjusted total offense level of 12, which coupled with Criminal History Category V, resulted in a guideline range of 27–33 months imprisonment.

The district court determined· Wilson's offense level based on the entire outstanding balance less the amount recovered by NCNB from the sale of assets and accounts receivables:

| | |
|---|---|
| $275,989.70 | Balance due NCNB under the loans |
| –$ 41,682.41 | Sale of assets and receivables * |

$234,307.29  Loss for determining base offense level

Thus, in determining Wilson's sentence, the district court did not decrease NCNB's loss by the amount it recovered from Post, or by any loss that occurred prior to the criminal act of filing the false statement. The district court imposed a sentence of 27 months imprisonment, a term of supervised release of three years, and a special assessment of $50.

The parties successfully moved this court to remand for resentencing in light of *United States v. Rothberg*, 954 F.2d 217 (4th Cir.1992). At resentencing, the district court imposed the same sentence.

Wilson appeals,· claiming that the $125,-000 paid to NCNB by the third-party guarantor should not have been included in calculating the loss for sentencing purposes; that the district court erred in determining the total amount of loss because it included loss that was not related to his false statement;. and that the district court erred in ·including a prior conviction for writing a check on a closed account in determining his Criminal History Category.

## II.

### A.

■ We first address whether payment to a lender by a third-party guarantor should be included in calculating loss for sentencing purposes. Within the context of these facts the issue is whether the district court erred in not reducing the amount of loss by the $125,000 paid by Post, the guarantor. · This court recently addressed the issue of determining loss under U.S.S.G. § 2F1.1 in *United States v. Rothberg*, 954 F.2d 217 (4th Cir.1992). In *Rothberg* the defendant was convicted of fraudulently obtaining credit from a financial institution. The district court refused to enhance the base offense level, reasoning that calculation of actual loss was too speculative because the victim might recover damages in a concomitant civil proceeding. *Id.* at 218. We remanded for resentencing, holding that recovery "from Rothberg's other assets is akin to restitution and is not a proper consideration in determining the loss suffered as a result of the fraud." *Id.* at 219; *see also United States v. Saunders*, 957 F.2d 1488, 1494 (8th Cir.) (rejecting defendant's contention that restitution paid by his girlfriend should be deducted from "the dollar figure associated with his conduct"), *cert. denied*, —— U.S. ——, 113 S.Ct. 256, 121 L.Ed.2d 187 (1992).

---

* The district court properly deducted from loss the amount recovered from the pledged assets. This approach is consistent with the reasoning expressed in the guideline commentary applicable to fraudulent loan application cases:

   In fraudulent loan application cases and contract procurement cases where the defendant's capabilities are fraudulently represented, the loss is the actual loss to the victim (or if the loss has not yet come about, the· expect-

ed loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan.

U.S.S.G. § 2F1.1; comment. (n.7(b)).

Applying *Rothberg*, we conclude that the $125,000 paid by Post in settlement with NCNB should be included in calculating loss for determining Wilson's offense level. We agree with the district court that this amount should not be deducted from loss because as payment by a guarantor, it is also akin to restitution. The defendant, through a third party, is returning that which he took.

Another basis for including the $125,000 in determining the total amount of loss is found in U.S.S.G. § 1B1.3(a)(1) (Nov.1991). This subsection provides that a defendant's sentence is to be based on:

> all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

The dictates of this relevant conduct provision require that the losses suffered by both NCNB and Post should be considered for sentencing purposes to reflect the full consequences of Wilson's criminal conduct.

### B.

■ Wilson also maintains that because some of the loss suffered was not related to his criminal conduct, the district court erred by using the total figure ($275,989.70) when calculating loss under U.S.S.G. § 2F1.1. When the offense involves making a false statement, the inquiry to determine loss must focus on the amount of loss related to the false statement. Critical to the resolution of this appeal is the fact that at the time the loan applications were made and approved, no offense had been committed. Thus, while business losses began to occur soon after the loans were made, these losses were not related, as far as the record before us reveals, to the criminal conduct. Rather, a false statement was filed approximately seven months after the loans were made. The task of the district court is to determine the amount of loss that is attributable to Wilson's criminal conduct. Thus, we hold that in the event a bank loan legitimately is obtained by one who subsequently submits a statement that is required in connection with the loan and that statement is false (e.g., defendant falsifies a required periodic report of his current assets), the loss under U.S.S.G. § 2F1.1 is the loss that can be attributed to the false statement. Generally, the loss attributable to the false statement is the amount of the outstanding loan less any amount recouped by the bank from assets pledged against the loan, less the estimated amount the bank would have lost had the statement not been false. Because the record is unclear as to whether this approach was followed by the district court in calculating the loss, we remand for resentencing.

### C.

■ Finally, we are asked to consider whether the district court properly included Wilson's prior conviction for writing a check on a closed account in determining his Criminal History Category. Wilson asserts that writing a check on a closed account is analogous to writing a check on an account for which there are insufficient funds, an offense expressly excluded by U.S.S.G. § 4A1.2(c)(1), for determining a defendant's Criminal History Category unless "the prior offense was similar to an instant offense." Because this guideline only excludes "insufficient funds check[s]," the district court concluded that this subsection did not apply and, therefore, included the prior conviction in determining Wilson's Criminal History Category.

The commentary to this guideline states: " 'Insufficient funds check,' as used in § 4A1.2(c)(1), does not include any conviction establishing that the defendant used a false name or *non-existent account*." U.S.S.G. § 4A1.2(c)(1), comment. (n.13) (emphasis added). The district court reasoned that the account Wilson used as the vehicle to commit this prior offense was a nonexistent one because it had been closed prior to the utterance of the check in question. We find no error in this reasoning. A closed

account is a nonexistent account and distinguishable from an open account having insufficient funds on deposit to cover a check when presented for payment.

### III.

In summary, we adhere to the reasoning of *Rothberg* and hold that payments by a guarantor are to be included in calculating loss under U.S.S.G. § 2F1.1. Therefore, the judgment of the district court is affirmed as to the inclusion of the $125,000 in calculating the loss. We also conclude that the offense of writing a check on a closed account was properly included when determining Wilson's Criminal History Category. However, we vacate the sentence and remand for resentencing after a determination of loss is made consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.