United States Court of Appeals,

Eleventh Circuit.

Nos. 94-2231, 94-2232.

UNITED STATES of America, Plaintiff-Appellee,

v.

APEX ROOFING OF TALLAHASSEE, INC., Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Lisa Jean DOXSEE, Defendant-Appellant.

April 17, 1995.

Appeals from the United States District Court for the Northern District of Florida. (No. 93-03109/LAC), Lacy A. Collier, Judge.

Before BIRCH and DUBINA, Circuit Judges, and JOHNSON, Senior Circuit Judge.

PER CURIAM:

This appeal presents the issue of whether restitution is appropriate when the victim of the crime charged has sustained no financial loss. The district court awarded restitution to the Navy from the contracting individual and corporate defendants resulting from a terminated work contract, although the Navy incurred no financial loss. We VACATE and REMAND.

## I. BACKGROUND

Defendant-appellant Lisa Jean Doxsee was president, treasurer and secretary of corporate defendant-appellant Apex Roofing of Tallahassee, Inc. ("Apex"), a Florida corporation. Approximately, September, 1991, the United States Department of the Navy awarded Apex the contract to replace or repair the roofs on two buildings at Naval Air Station, Whiting Field in Milton, Florida. The

original contract price was $103,000.00.

Apex commenced work approximately the end of January, 1992. It ordered on credit most of the materials for the project from Huls America, Inc. ("Huls") in New Jersey.[1] The total amount was approximately $35,000.00.

The Navy paid Apex as the work progressed. To receive a progress payment, the Navy required Apex to submit an invoice documenting the costs of materials and labor for the project to date. The Navy also required Apex to certify that "[p]ayments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification." When this documentation was submitted, the Navy's job site inspectors would verify the proper percentage of the contract work that had been completed, and the Navy issued a progress payment based on that percentage.

During Apex's performance on the contract, the Navy made four progress payments to Apex.[2] Before receiving each of these payments, Apex submitted a certificate stating that the subcontractors or suppliers had been paid. [3] The Navy paid Apex

_____

[1]Although during the course of performing the contract, Apex received some materials and/or services on credit from other companies, the greatest amount was owed to Huls.

[2]The Navy made the following payments to Apex based on the percentage of the work completed: (1) $43,005.00 on March 12, 1992, based on 42% completion, (2) $8,660.00 on March 31, 1992, based on 50% completion, (3) $20,199.00 on May 26, 1992, based on 67% completion, and (4) $11,000.00 on June 5, 1992, based on 75% completion.

[3]On the first two payments, this certificate was signed by Apex's vice-president; on the last two payments, the certificate

$82,864.00 based on completion of seventy-five percent of the project.[4]

Approximately at the time of the last payment, Apex stopped work on the contract. The immediate cause of the work stoppage was the discovery of asbestos in the area where Apex had been working. This would have required a modification of the contract to account for the removal of the asbestos.

Additionally, Apex was experiencing serious financial difficulties. Payments from the Navy were assigned to Apex's bank to satisfy loans that had been made to Apex.[5] Because of cash flow problems, Doxsee was using available cash to pay her employees and for necessary expenses. Finally, Apex could not pay its employees and, consequently, could not continue to work on the Navy project or any other project. No subcontractors, however, were unpaid. Doxsee filed for personal bankruptcy.

Apex did not stop work on the Navy contract because of any action taken by any supplier of materials; essentially Apex had the necessary materials to finish the project at the work site. When Apex could not finish the project, the Navy terminated the contract and completed the work with its own personnel. The Navy

_____

was signed by Doxsee.

[4]We are cognizant that $82,864.00 is more than 75% of the original contract price of $103,000.00, a difference of $5,614.00. Nevertheless, the Navy determined the progress payments to Apex based on its evaluation of the percentage of the contract work completed. The Navy also did not file a claim for having paid for more than 75% of the contract price and receiving less than that percentage of work completed by Apex. Accordingly, we will use the Navy's determination of 75% as being the amount of work completed on the project by Apex.

[5]The Navy was aware of this assignment.

even used materials that had been left at the work site by Apex. After Apex stopped work on the contract, the Navy learned that Apex had not paid all of its suppliers as it had certified before receiving each progress payment.[6] Doxsee and Apex were indicted for this offense in violation of 18 U.S.C. § 1001 and pled guilty.

The presentence report ("PSR") recommends that, if Doxsee and Apex were ordered to make restitution, then that restitution should go to Apex's bonding company and suppliers.[7] Because they had pled guilty to submitting a false certification to the Navy, Doxsee and Apex objected to their PSRs and contended that the Navy was the only victim.[8] Further, they argued that no restitution was owed to the Navy because it had suffered no loss as a result of the offense. They maintained that they had earned all the funds received from the Navy because work had been performed on the contract of equal value.

Doxsee also raised the issue of her inability to pay

---

[6]It was determined that Apex still owed $32,932.59 to Huls, $2,296.07 to Lowes, $1,060.00 to Burleson Van Lines, and $1,414.96 to Clark Sand Company. Apex's bonding company, International Fidelity Insurance Company, subsequently paid Huls and Lowes a total of $35,229.63 pursuant to the payment bond that Apex had purchased before being awarded the contract. The bonding company did not pay Burleson Van Lines and Clark Sand Company a total of $2,474.96.

[7]The PSR recommended that $35,229.63 should go to Apex's bonding company, $1,060.00 to Burleson Van Lines, and $1,414.96 to Clark Sand Company. This was total restitution in the amount of $37,704.59. The Navy did not file a claim for the cost to complete the project.

[8]Doxsee and Apex argued that determining the amounts owed to the bonding company and to suppliers was a civil matter between Apex and these companies. Doxsee and Apex contended that they had not been charged with misappropriating funds that should have gone to suppliers, but with not telling the Navy that suppliers had not been paid.

restitution. Responding to the initial PSR recommending a fine and restitution, Doxsee stated that she was financially unable to pay a fine or restitution. While the amended PSR recognizes that "Doxsee may not have the financial ability to pay the bonding company," it nevertheless states that "she definitely has the ability to pay the individual victims in the instant offense." Doxsee PSR at 25, ¶ 99. Concerning Apex's ability to make restitution, the PSR notes that the corporation had been dissolved and did "not have the financial ability to make restitution in this case." Apex PSR at 13, ¶ 51.

At sentencing, the district court specifically found that "there was not more than one victim," R3-45, and that, when "the crime was committed the United States Government was the victim," R3-64. Nevertheless, the district court ordered Doxsee and Apex to pay restitution of $37,704.59 *each,* the total amount owed to the bonding company and suppliers, not to the Navy. While the district judge appeared to recognize that the Navy had not suffered actual loss in this amount, R3-63-65, he seemed to reason that the Navy *potentially* could lose this amount *if* the unpaid suppliers repossessed the roofing work completed or materials because they had not been paid. At sentencing, the district judge expressed his concern for potential loss to the Navy in response to Doxsee's attorney's explanation that the Navy had received the work for which it had paid:

> MR. KEITH: My point is at the time, the money she received for this contract of 80 something thousand dollars, the Navy received the same amount of work from Apex or Ms. Doxsee.

> THE COURT: That's where we're talking about the facts, again. They did not, because *in the Court's opinion they don't own*

*the roof that's put up there and the suppliers could come in and unshingle the roof and take it away and that is the loss. So the Government was in fact out,* and unless somebody paid the supplier, then they still own the roof, they can come get it and take it back.... They have the right to do that, so that's the loss.

R3-65 (emphasis added).[9]

Although the district judge recognized that neither Doxsee nor Apex had the ability to pay a fine, R3-2,6, he nevertheless ordered restitution of $37,704.59 from each:

[A]s to Apex Roofing.... I do find there is no need to place the corporation on probation because it has been dissolved. I do find there's limited, if any, financial ability, and therefore a fine will be waived. However, *I am going to order restitution, for what it's worth, in the amount of [$]37,704.59....*

[A]s to defendant Lisa Doxsee.... it's the judgment of the Court that you be committed to the custody of the Bureau of Prisons to be imprisoned for a term of six months.... And upon release be placed on a period of supervised release for a period of three years.... In addition, *[Doxsee] shall make restitution in the amount of $37,704.59.* That will be due and payable to the United States Government and their responsibility to determine the ultimate receiver of that amount.

R3-59-60 (emphasis added). In ordering restitution of both Doxsee and Apex, the district judge gave no reviewable findings of how Doxsee or Apex could actually pay the restitution designated. Instead, the district judge represents that "I'm trying to send a message to all of those that deal with the United States Government. The Government is not an entity that you take advantage of." R3-66. Doxsee and Apex timely appealed their respective sentences regarding restitution to the Navy.

## II. DISCUSSION

[9]The court further suggested that the Navy may have a responsibility to use the restitution to reimburse the bonding company and the suppliers. R3-60.

We review a district court's order of restitution for abuse of discretion. *United States v. Husky,* 924 F.2d 223, 225 (11th Cir.), *cert. denied,* 502 U.S. 833, 112 S.Ct. 111, 116 L.Ed.2d 81 (1991). Using restitution as part of a sentence is governed by the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3663-3664. Under 18 U.S.C. § 3663(a)(1), a district court is authorized to order a defendant to make restitution to any victim of the criminal offense for which the defendant is convicted. In determining whether to order restitution under section 3663 of this title and the amount, the district court "shall consider the amount of the loss sustained by any victim *as a result of the offense,* the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a) (emphasis added). We have determined that the statute directs the sentencing court to consider not only the victim's injury, but also the financial condition and earning ability of the defendant to pay restitution. *United States v. Barnette,* 10 F.3d 1553, 1556 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 74, 130 L.Ed.2d 28 (1994). Consequently, we have required that the district court evaluate a defendant's financial situation and ability to pay before determining the restitution amount. *United States v. Cobbs,* 967 F.2d 1555, 1558 (11th Cir.1992) (per curiam); *United States v. Stevens,* 909 F.2d 431, 435 (11th Cir.1990).

Significantly, under *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990), we have held that the "district court is authorized to order restitution only

for the loss caused by the *specific conduct underlying the offense of conviction.*"  *Cobbs,* 967 F.2d at 1559 (emphasis added);  *see United States v. Young,* 953 F.2d 1288, 1289 (11th Cir.1992) ("A court therefore exceeds the scope of its authority under the VWPA when it orders restitution for *uncharged offenses.*"  (emphasis added));  *United States v. Stone,* 948 F.2d 700, 704 (11th Cir.1991) ("[W]e hold that a restitution order under the VWPA may not exceed the loss attributable to the *specific conduct that is the basis of the offense of conviction.*"  (emphasis added)).  "When the offense involves making a false statement, the inquiry to determine loss must focus on the amount of loss related to the false statement.... The task of the district court is to determine the amount of loss that is attributable to [the defendant's] criminal conduct."  *United States v. Wilson,*  980 F.2d 259, 262 (4th Cir.1992).  The sentencing court "may not authorize restitution even for like acts significantly related to the crime of conviction."  *Young,* 953 F.2d at 1289.

In this case, Doxsee and Apex pled guilty to making false statements to the Navy in violation of 18 U.S.C. § 1001.  The district court found that the Navy was the *only victim* of this crime.  The $37,704.59 restitution amount, however, for both Doxsee and Apex represents the losses to Apex's bonding company and suppliers and not to the Navy.[10]  This is not the federal crime to

---

[10]Before Apex was awarded the contract to repair or replace two roofs for the Navy at Whiting Field for $103,000.00, it had to purchase a performance bond and a payment bond.  " "[P]erformance bonds' guarantee that the contractor will complete the project in accordance with the specifications;  and "payment bonds' ensure that those who furnish labor and materials for the project will be paid."  *See United States v. Stern,* 13 F.3d 489,

which Doxsee and Apex pled guilty.

Indeed, the Navy appears to have sustained no loss whatsoever, financial or otherwise. The Navy paid Apex on the performance contract only for the percentage of the work that had been completed or $82,864.00 for seventy-five percent of the work instead of $103,000.00 for a hundred percent of the work. When Apex had to stop work on the contract because of the asbestos problem and its financial difficulties, the Navy terminated the contract[11] and completed the project using its own personnel and materials left at the job site by Apex. The Navy clearly received a benefit of value that it considered equal to the amount of money that it paid to Apex. To uphold the district court's restitution orders of $37,704.59 for Doxsee and Apex, we would have to find that the Navy suffered an actual loss in these amounts as a result of the offense. If the Navy were to receive $37,704.59 from either Doxsee or Apex, then it would have a windfall.

The district judge's speculation as to potential loss to the Navy from repossession of materials by suppliers is problematic for two reasons. First, the $37,704.59 restitution amount is the alleged loss to the bonding company and suppliers; the actual loss

_____

491 n. 1 (1st Cir.1994).

[11]Since Apex could not have continued work on the contract at the time that stoppage occurred because of the discovery of asbestos, the Navy essentially terminated the contract for convenience and not for default. Thus, the reason Apex stopped work on the contract was not because it had not paid its suppliers or had certified falsely that it had paid its suppliers, but because of the asbestos problem. The Navy apparently terminated the contract because it wanted to complete the project without the delays that would have been occasioned by modifying the contract because of finding asbestos.

to the Navy would have to be determined when and *if* such repossession were ever found to be authorized under applicable law, which we doubt would occur. Second, we are unconvinced that suppliers would or could gain access to a secure naval base for the purpose of exercising self-help, even if available. By recognizing that the Navy was the only victim with no apparent financial loss, the district judge could not award restitution to the Navy based on amounts owed by Apex to its bonding company and suppliers.[12] Thus, the restitution award in any amount to the Navy for Doxsee and Apex was an abuse of discretion.[13]

Even if restitution were appropriate, the district court further erred by not evaluating the financial condition and ability to pay of Doxsee and Apex. Although the judge observed that neither Doxsee nor Apex had the ability to pay a fine, he

---

[12]The suppliers' recourse would be to seek payment from the bonding company pursuant to the payment bond. *See United States ex rel. Pertun Const. Co. v. Harvesters Group, Inc.,* 918 F.2d 915 (11th Cir.1990) (discussing the right of suppliers of a government contractor to seek payment from the bonding company under the Miller Act because federal buildings are exempt from liens). In this case, Apex's bonding company paid two suppliers a total of $35,229.63. The other two unpaid suppliers never filed a claim with the bonding company. Consequently, the bonding company and the two suppliers suffered a loss because of Apex's financial problems and not because of conduct violating 18 U.S.C. § 1001. The criminal offense is not that Apex failed to pay its suppliers. That is a *civil matter* between Apex, the suppliers, and the bonding company. The criminal offense is that Apex told the Navy that it had paid its suppliers when it had not. Any loss to the suppliers or the bonding company was not caused by this offense and cannot be considered a loss to the Navy for Sentencing Guidelines purposes.

[13]Ironically, at sentencing a discussion occurred concerning negotiations by representatives of Apex with the Navy regarding the possibility that the Navy still owed Apex money for work performed on the contract. R3-48. Any money owed by the Navy to Apex would be paid to the bonding company and not to Apex.

inconsistently required each to pay a sizeable restitution amount. While an indigent defendant can be ordered to pay restitution if it appears that there is a future ability to earn or acquire money, *Stevens,* 909 F.2d at 435, a dissolved corporation does not have such ability.[14] The district judge "apparently focused only on the amount of loss to the victim[s]" other than the Navy, the only victim covered by the offense of conviction, and did not consider Doxsee and Apex's future ability to pay the ordered restitution as required by section 3664(a). *United States v. Newman,* 6 F.3d 623, 631 (9th Cir.1993).

## III. CONCLUSION

Appellants Doxsee and Apex contend that they erroneously were ordered to make restitution to the Navy for false certification that suppliers had been paid on a roofing contract. Because the Navy suffered no financial loss and paid Apex on its roofing contract only for the benefit that it determined that it received, we VACATE and REMAND with instructions to eliminate the respective restitution orders for the reasons discussed herein.

---

[14]Under the Sentencing Guidelines, a court can order an organization to pay restitution only if it is authorized under 18 U.S.C. §§ 3663-3664. U.S.S.G. § 8B1.1(a)(1).