**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rosalyn TAYLOR and Mary Lu Myers,**
**Defendants–Appellants.**

Nos. 00–3376, 00–3377.

United States Court of Appeals,
Sixth Circuit.

Aug. 1, 2001.

Before JONES, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

JONES, Circuit Judge.

On June 3, 1999, appellants-defendants Rosalyn Taylor ("Taylor") and Mary Lu Myers ("Myers") were charged in a thirty count indictment. Count one alleged that they conspired to make and use materially false writings and documents in connection with the delivery and payment of health care services in violation of 18 U.S.C. §§ 1101 and 1035. Counts two through thirty alleged that Taylor and Myers knowingly and willfully made materially false writings in a matter involving health care benefit programs in violation of 18 U.S.C. §§ 1035 and 2. Taylor and Myers entered into separate plea agreements

whereby they each pled guilty to count two of the indictment. They were sentenced to five months imprisonment, three years of supervised release (with a special condition that the first five months be on home confinement with electronic monitoring), and were ordered to pay restitution in the amount of $34, 034.00. On appeal, the defendants contend that the district court erred when it enhanced their sentences for causing a loss of more than $20,000 pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2F1.1(b)(1) and held them jointly and severally liable to pay $34,034.00 in restitution. For the reasons stated below, we **AFFIRM** the defendants' sentences.

## I. Facts

Defendants Rosalyn Taylor and Mary Lu Myers were the co-administrators of the Morgan County Home Health Agency ("the Agency" or "MCHHA"), which provided nursing and hygienic services to home bound persons in Morgan County, Ohio. As co-administrators, Taylor and Myers jointly directed the daily activities of numerous nurses, home health aides and support staff who provided home health services to patients. They were also responsible for the billing of such services, hiring recommendations, and reporting the activities of the MCHHA to the Morgan County Commissioners, who operated the Agency.

Beginning on or about January 1, 1995, Taylor and Myers directed MCHHA employees to alter nursing notes and eliminate any reference to improvement of their patients' condition in order to assure that these patients would remain eligible for Medicare and Medicaid. Taylor and Myers also directed employees to perform both skilled nursing and home health aide services in a single visit but to falsely document that they made two separate visits. This "double billing" was done in order to circumvent Medicare and Medic-aid regulations that allow only one reimbursement per visit regardless of how many services are performed.

On June 3, 1999, Taylor and Myers were charged in a thirty count indictment that alleged that they conspired to make and use materially false writings and documents in connection with the delivery of and payment of health care services in violation of 18 U .S.C. §§ 1001 and 1305, and that they knowingly and willfully made materially false writings in a matter involving health care benefit programs, in violation of 18 U.S.C. §§ 1035 and 2.

After initially pleading not guilty, Taylor and Myers entered into separate plea agreements in which they agreed to plead guilty to count two of the thirty count indictment. On October 4, 1999, the defendants pled guilty before the district court. The court stated that

The parties agree that pursuant to Sentencing Guideline Section 2F1.1(b)(1), the relevant conduct attributable to them is more than 320,000.00 but less than $40,000.00. The parties understand that this is not binding on the court and that the final determination concerning the amount to be considered as relevant conduct rests with the court.

Def. Consol. Br. at 11.

Thereafter, Presentence Reports were prepared for both defendants and filed with the district court. The Presentence Reports found that the defendants' fraudulent activity involved over 1,500 instances of fraudulent billing and caused Medicare and Medicaid to pay $34,034.00 for services that were not rendered or for which the agency was not eligible for reimbursement. The Presentence Reports recommended that the defendants' base offense levels be enhanced by four points pursuant to U.S.S.G. § 2F1.1(b)(1)(E) for causing a loss in excess of $20,000.00. J.A. at 131, 170. The Reports also recommended that, pursuant to 18 U.S.C. § 33663(a), the de-

fendants be ordered to pay restitution in the amount of $34,034.00.

At sentencing, the defendants argued for a downward departure on the grounds that the $34,034.00 loss figure overstated the seriousness of their offense.[1] The defendants noted that the Presentence Report figure was based on a Medicaid loss of $2,574.00 and a Medicare loss of $31,460.00. Although the defendants did not contest the Medicaid loss, they claimed that the Medicare loss did not reflect the actual loss to Medicare.

According to the defendants, the Morgan County Home Health Agency was a not-for-profit governmental home health care agency operating through a Medicare intermediary. Each year, the Medicare intermediary established cost limits and a charge per service for each type of service offered by the Agency. When the Agency provided services, it billed Medicare and Medicare reimbursed the Agency according to a fixed cost per visit. The defendants claimed that since Morgan County is a poor county that does not have excess money to spend on home health care, the Home Health Agency was forced to rely almost entirely on Medicare and Medicaid reimbursements. They asserted that this arrangement presented a serious problem for the Home Health Agency. Given that the federal Medicare and Medicaid reimbursements did not arrive until long after the services were provided, the Agency was overwhelmed by day-to-day expenses including the salaries of its employees. The defendants explained that they fabri-

cated health care visits and overbilled Medicare in order to generate the short-run cash flow needed to meet daily expenses.

However, the defendants argued that this fraudulent billing did not cause Medicare to suffer any long-term losses because Medicare funding is ultimately based on the Agency's annual costs, rather than the number of visits that they billed.[2] According to the defendants, the Agency filed an Actual Cost Report with Medicare at the end of every fiscal year. If the Agency's annual costs were less than the amount that it had received from Medicare during that year, Morgan County would compensate Medicare for the overpayment.

Notwithstanding this argument, the district court found that the defendants admitted that they were responsible for over 1,500 instances of fraudulent billing and adopted the $34,034.00 figure recommended in the Presentence Reports. Accordingly, the district court enhanced the defendants' offense levels by four points pursuant to U.S.S.G. § 2F1.1(b)(1)(E) and held the defendants jointly and severally liable to pay restitution in the amount of $34,034.00 pursuant to 18 U.S.C. § 3663(a).

### II. Standard of Review

■ This Court reviews challenges to the application of the Sentencing Guidelines *de novo.* The Sixth Circuit has specifically held that challenges to the interpretation of the term "loss" under U.S.S.G. § 2F1.1 is subject to *de novo* review. *See United States v. Wolfe,* 71 F.3d 611, 616

---

1. United States Sentencing Guideline § 2F1.1, Application note 11 states: "In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted."

2. According to the defendants, Medicare reimburses the agency the lesser of agency costs or agency charges. They contend that since the Morgan County Home Health Agency's costs were always less than their charges, they were reimbursed according to their costs.

(6th Cir.1995); *United States v. Holiusa,* 13 F.3d 1043, 1045 (7th Cir.1994)(the "meaning of 'loss' for the purposes of section 2F1.1 is a question of law that is subject to de novo review"). However, a "district court's determination of the amount of money [a] defendant wrongfully received from [a federal] agenc[y] is a finding of fact and is accepted on appeal unless the finding is clearly erroneous." *United States v. Brown,* 151 F.3d 476, 489 (6th Cir.1998) (quoting *United States v. Hintzman,* 937 F.2d 1196, 1199 (7th Cir .1991)).

## III. Discussion

### A. Calculation of Loss

On appeal, the defendants argue that the district court erred in enhancing their sentences and ordering restitution because it focused on the $34,034.00 short term loss that the government sustained when it paid for fraudulent Medicaid and Medicare claims rather than the net or actual loss that was established at the end of the fiscal year.

As the defendants point out, there is significant support for the proposition that sentencing courts should focus on the net or actual loss that the victim suffered. For example, Section 2F1.1 Application note 8(b) states that

In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time of the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan.

Numerous courts, including the Sixth Circuit, have applied this application note and

looked to the net loss in cases involving fraudulent loan applications. *See United States v. Chichy,* 1 F.3d 1501, 1508 (6th Cir.1993); *United States v. Mount,* 966 F.2d 262, 265 (7th Cir.1992)(The Sentencing Commission's notes defining loss "call[ ] for the court to determine the net detriment to the victim rather than the gross amount of money that changes hands"); *United States v. Rothberg,* 954 F.2d 217, 219 (4th Cir.1992). In addition, federal courts have also looked to the victim's net or actual loss in cases that did not involve fraudulent loan applications. *See United States v. Schneider,* 930 F.2d 555, 558 (7th Cir.1991)(disallowing the use of the face value of fraudulently obtained government contracts for calculating the amount of loss).

■ However, although it is appropriate for the sentencing court to consider the victim's actual or net loss in cases where the defendant, himself, offsets the victim's loss, we do not believe that such an inquiry is necessary, in cases such as this one, where a third party offsets the victim's loss. In *United States v. Wolfe,* the defendant ran a Ponzi or triangle scheme in which he caused investors to lose approximately 4.2 million dollars. 71 F.3d at 613. On appeal, the defendant argued that the actual loss was substantially less than 4.2 million dollars because a substantial portion of the losses suffered by first-time investors could be recovered from beneficiaries of the scheme through the bankruptcy estate. This Court rejected the defendant's argument. Citing cases from several circuits, we held that "the agency of another cannot be used to reduce the amount of loss" and that therefore, Wolfe was not entitled to "reduce the magnitude of his own crime by relying on the actions of the bankruptcy trustee." *Id.* at 617 (citing *United States v. Wilson,* 980 F.2d 259, 262 (4th Cir.1992) (holding that the amount repaid to a bank by the guarantor of a fraudulently induced loan was never-

theless properly included in the amount of the loss that the fraud inflicted).

In the instant case, the defendants allege that Morgan County reimbursed Medicare for the overpayments that they fraudulently procured and that Morgan County's alleged payment should be factored into the calculation of their sentences. We disagree. Including Morgan County's alleged payment in the calculation of the loss would allow Taylor and Myers to reduce the magnitude of their own crime by relying on Morgan County, which (supposedly) reimbursed the federal government for the losses that defendants' caused even though it never authorized their scheme. As we held in *Wolfe*, the defendants cannot reduce the magnitude of their own crimes by relying on the actions of another. *Id.*

## B. Findings of Fact

Furthermore, assuming *arguendo* that the defendants could benefit from Morgan County's payment to Medicare, their argument must nevertheless fail because they have not introduced any evidence that the Medicare reimbursement ever took place (or ever will take place). At sentencing, defendants presented evidence that Medicare billed Morgan County for the payments that it made in excess of the County's actual cost.[3] However, although the defendants' evidence indicates that the government may have billed Morgan County for the overpayments that took place as a result of the defendants' fraud, they have not presented any evidence that Morgan County compensated the federal government for its overpayments.

As noted above, we review the district court's factual determination of the amount of money a defendant wrongfully

3. The defendants introduced a letter from Medicare to Mary Lu Vincent (currently Mary Lu Myers) billing Morgan County Home

received from a federal agency for clear error. *Brown*, 151 F.3d at 489. Given that the defendants have not provided any evidence that Morgan County actually reimbursed Medicare for the overpayments (or that it plans to reimburse Medicare in the future), we must reject their assertion that the district court committed "clear error" when it found that the defendants caused Medicare a total loss of $34,034.00.

## IV. Conclusion

For the reasons stated above, we **AFFIRM** the sentences and restitution imposed by the district court.

Health Agency for a $106,239.07 overpayment that had occurred during fiscal 1995. J.A. at 158.