**UNITED STATES of America, Plaintiff–Appellee,**

v.

**HUGHES AIRCRAFT CO., INC., Defendant–Appellant.**

No. 92–50681.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1993.

Decided March 28, 1994.

Amended April 28, 1994.

976

Gary Feess, Quinn Emanuel Urquhart & Oliver, Los Angeles, CA, for defendant-appellant.

George B. Newhouse, Jr., Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.

## PER CURIAM:

Hughes Aircraft Co., Inc. ("Hughes") appeals from its conviction and sentence for conspiring to defraud and make false statements to the federal government. We affirm.

## FACTS AND PRIOR PROCEEDINGS

Hughes contracted with the United States to manufacture microelectronic circuits, known as "hybrids," which are used as components in weapons defense systems. The contracts required Hughes to perform a series of tests on each hybrid. As the hybrids made their way through the testing process, they were accompanied by paperwork indicating what tests had been performed, the results of those tests, and the identity of the operator of the testing equipment.

Hughes's former employee, Donald LaRue ("LaRue"), was a supervisor responsible for ensuring the accuracy of the hybrid testing process. LaRue arranged for the paperwork to indicate falsely that all tests had been performed and that each hybrid had passed each test. When LaRue's subordinates called his actions to the attention of LaRue's supervisors, the supervisors did nothing about it. Instead, they responded that LaRue's decisions were his own and were not to be questioned by his subordinates.

Hughes and LaRue were charged with one count of conspiracy to defraud and make false statements to the United States in violation of 18 U.S.C. § 371,[1] and two counts of making false statements in furtherance of that conspiracy in violation of 18 U.S.C. § 1001.[2] LaRue was acquitted on all counts.

1. "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   If, however, the offense, the commission of which is the object of the conspiracy, is a misde-

meanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371.

2. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent

Hughes was convicted of the conspiracy charge, but acquitted of the other two charges.[3] Hughes appeals from both its conviction and fine of $3.5 million.

## ANALYSIS

### I. *Conviction*

#### A. Standard of Review

■ Hughes raises several arguments in support of the contention that its conviction under § 371 must be overturned as a matter of law. Because these arguments present pure questions of law, we review them *de novo*. See *Anderson v. United States*, 966 F.2d 487, 489 (9th Cir.1992).

#### B. Discussion

##### 1. Inconsistent Verdicts

■ Hughes first argues that it must be acquitted as a matter of law because the same jury that convicted Hughes acquitted its "indispensable co-conspirator," LaRue, of the identical charges on identical evidence. Hughes bases its argument on three Supreme Court cases from the 1930's and 1940's,[4] arguing that they provide an exception to the general rule that inconsistency of jury verdicts is not a ground for reversal. See *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932); *United States v. Powell*, 469 U.S. 57, 64–65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461 (1984). Ac-

cording to Hughes, the post-*Dunn* Supreme Court cases indicate that the inconsistent verdict rule applies only to situations involving inconsistencies in multiple verdicts against a single defendant, not inconsistencies in multiple verdicts against multiple defendants. Controlling Ninth Circuit precedent precludes us from adopting such a rule.

In *United States v. Valles–Valencia*, 811 F.2d 1232 (9th Cir.), *as amended by* 823 F.2d 381 (1987), the defendant argued that, because his sole co-conspirator was acquitted, his own conviction for conspiracy was impossible as a matter of law. Initially we agreed and stated "the acquittal of all but one of the conspirators signifies that the jury found no agreement to act, and the remaining conspirator cannot have [conspired with himself] since '[c]onspiracy requires a plurality of actors....' " 811 F.2d at 1239 (quoting *United States v. Wright*, 742 F.2d 1215, 1224 (9th Cir.1984)). In response to the subsequent Supreme Court decision in *Powell*, however, we amended our ruling, stating that

> [I]nconsistent verdicts can just as easily be the result of jury lenity as a determination of the facts. Thus, the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act. Moreover, the Court has rejected a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was

statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1001.

**3.** Hughes is charged with 50 additional counts of false statements to the United States. These counts were severed and await resolution of this appeal.

**4.** Those three cases do not support Hughes's contention because none dealt with inconsistent jury verdicts. In *Hartzel v. United States*, 322 U.S. 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944), the trial court set aside the conviction of two of three co-conspirators. The Court concluded "the setting aside of [the two co-conspirators'] convictions makes it impossible to sustain petitioner's conviction upon the basis of ... the conspiracy count." *Id.* at 682 n. 3, 64 S.Ct. at 1234 n. 3. In *Morrison v. California*, 291 U.S. 82, 54 S.Ct. 281,

78 L.Ed. 664 (1934), the Court found that the evidence was insufficient to support one of the co-conspirator's convictions. Thus, the Court noted "[i]t is impossible in the nature of things for a man to conspire with himself" and ruled "[t]he conviction failing as to the one defendant must fail as to the other." *Id.* at 92 & 93, 54 S.Ct. at 285 & 286. Finally, in *Gebardi v. United States*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932), the Court ordered an acquittal of a woman convicted of conspiring with a man to violate the Mann Act (transporting a woman interstate for the purposes of prostitution) because the evidence was insufficient to support her conviction. The Court noted that under the Mann Act the woman's consent was not criminal. *Id.* at 123, 53 S.Ct. at 38. Thus, her consent, without more, was insufficient evidence to convict her of conspiracy to violate the Mann Act. *Id.* The Court concluded "[a]s there was no proof that the man conspired with anyone else to bring about the transportation, the convictions of both petitioners must be [r]eversed." *Id.*

not the product of lenity, but of some error that worked against them. The fact that the conflict in this case involves charges against different defendants, rather than different charges against the same defendant does not affect the rationale.

823 F.2d at 381–82 (internal quotation and citation omitted).

The Supreme Court's decision in *Powell* supports this extension of the application of the *Dunn* rule insulating inconsistent jury verdicts from appellate review. "[T]he Government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity—suggest that the best course to take is simply to insulate jury verdicts from review on [inconsistency] ground." *Powell*, 469 U.S. at 68–69, 105 S.Ct. at 479. Contrary to Hughes's contentions, this Circuit has not recognized a post-*Powell* exception to the *Dunn* rule.[5] Accordingly, the conviction of one co-conspirator is valid even when all the other co-conspirators are acquitted.

### 2. Respondeat Superior

■ Hughes next argues that it is entitled to a judgment of acquittal because the evidence against it and LaRue was identical, yet one was convicted while the other was acquit-

ted.[6] This argument is predicated on the assumption that LaRue was the sole employee for whose actions Hughes could be found vicariously guilty and that the · evidence against each of the two defendants was necessarily identical. However, some of the evidence of conspiracy was offered against Hughes alone. Moreover, as this evidence indicates, the jury could have found Hughes guilty based on the actions or omissions of its supervisors and employees other than LaRue. As Hughes's assumption that the facts against both defendants were identical is erroneous, and no other facts support its argument, we reject this contention.

### 3. Statutory Construction

■ Hughes's third argument is that the plain language of 18 U.S.C. § 371, which states that if "two or more persons conspire ... each" may be punished, prevents its conviction because it is legally impossible for a party to conspire with itself. Hughes argues that, because it is vicariously liable for each of its employees, a conspiracy between employees would necessitate a finding that Hughes conspired with itself. We reject this creative construction. The statutory language does not exclude criminal liability for a corporation simply because its employees are the actual conspirators. To rule otherwise

5. To support this contention, Hughes cites *United States v. Hart*, 963 F.2d 1278 (9th Cir.1992); *United States v. Guzman*, 849 F.2d 447 (9th Cir. 1988); and *United States v. Marchini*, 797 F.2d 759 (9th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987). Because each of these cases dealt with inconsistent verdicts against single defendants, they are inapplicable to Hughes's contention that we have recognized an exception to *Dunn* for inconsistent verdicts against multiple defendants. Moreover, each of these three cases holds that inconsistent verdicts can stand, even in the presence of a conviction that is rationally incompatible with an acquittal, provided sufficient evidence exists to support a verdict of guilt. *See Hart*, 963 F.2d at 1281; *Guzman*, 849 F.2d at 448; *Marchini*, 797 F.2d at 765. Hughes does not challenge the sufficiency of the evidence.

6. This argument is simply a variation of the inconsistent jury verdicts contention set out in part 1, *supra*.

Hughes cites to *United States v. Duz–Mor Diagnostic Laboratory, Inc.*, 650 F.2d 223 (9th Cir. 1981), as support for this argument. In *Duz-*

*Mor* the trial court granted a motion to dismiss the indictment against the only employee whose actions could have led to corporate vicarious liability, but denied the corporate employer's motion to dismiss. *Id.* at 225. On appeal we noted two exceptions to the general rule that inconsistencies in jury verdicts rendered in the same proceeding do not require reversal.

The first exception involves "the inconsistent conviction of a conspirator whose alleged co-conspirators have been acquitted." *Id.* However, this exception to *Dunn* was overruled in *Powell*, 469 U.S. at 64–65, 105 S.Ct. at 476 ("[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt' " (quoting *Dunn*, 284 U.S. at 393, 52 S.Ct. at 190)). The second exception, which applies to "inconsistent multiple convictions, where the defendant could be guilty of either, but not both, charged offenses[,]" *id.* at 226 n. 3, is clearly irrelevant to the facts of the instant appeal.

Moreover, *Duz-Mor* involved a *bench* trial, to which the *Powell* rationale does not apply.

would effectively insulate all corporations from liability for conspiracies involving only employees acting on behalf of that corporation. We hold that a corporation may be liable under § 371 for conspiracies entered into by its agents and employees. *See United States v. Peters,* 732 F.2d 1004, 1008 (1st Cir.1984).

Nonetheless, Hughes argues that the statute is ambiguous and that the rule of lenity compels a reversal of its conviction. *See United States v. LeCoe,* 936 F.2d 398, 402 (9th Cir.1991). However, the Supreme Court recently explained that "[t]his maxim of statutory construction ... cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term." *Taylor v. United States,* 495 U.S. 575, 596, 110 S.Ct. 2143, 2157, 109 L.Ed.2d 607 (1990). Moreover, the rule of lenity is not " 'to be used in complete disregard of the purpose of the legislature.' " *Perrin v. United States,* 444 U.S. 37, 49 n. 13, 100 S.Ct. 311, 317 n. 13, 62 L.Ed.2d 199 (1979) (quoting *United States v. Culbert,* 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978)). Because the interpretation offered by Hughes is implausible and would undermine the purpose of the statute, we reject it.

### 4. The Intracorporate Conspiracy Doctrine in Antitrust Law

■ Hughes also contends that we should extend the reach of the intracorporate conspiracy doctrine in antitrust law, which holds that a conspiracy requires "an agreement among two or more persons or distinct business entities." *Calculators Hawaii, Inc. v. Brandt Inc.,* 724 F.2d 1332, 1336 (9th Cir. 1983). *See also Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Harvey v. Fearless Farris Wholesale Inc.,* 589 F.2d 451, 455 (9th Cir.1979). While this doctrine has been extended by some circuits to civil rights cases, *see e.g. Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir.1985); *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972), other circuits have declined to do so, *see e.g. Dussouy v. Gulf Coast Invest. Corp.,* 660 F.2d 594, 603 (5th Cir.1981), and we have

reserved the issue. *See Portman v. County of Santa Clara,* 995 F.2d 898, 910 (9th Cir. 1993) (listing cases).

However, this doctrine has never been applied to criminal cases. As the First Circuit noted, "There is a world of difference between invoking the fiction of corporate personality to *subject* a corporation to civil liability for acts of its agents and invoking it to *shield* a corporation or its agents from criminal liability where its agents acted on its behalf." *Peters,* 732 F.2d at 1008 n. 7. Every other circuit to address the issue has come to the same conclusion. *See United States v. Ames Sintering Co.,* 927 F.2d 232, 236 (6th Cir.1990); *United States v. Stevens,* 909 F.2d 431, 432 (11th Cir.1990); *United States v. Hugh Chalmers Chevrolet–Toyota, Inc.,* 800 F.2d 737, 738 (8th Cir.1986); *Dussouy,* 660 F.2d at 603.

Hughes argues that public policy requires us to apply the intracorporate conspiracy doctrine to criminal cases. However, a stronger public policy mandates a contrary result. Simply because no other corporation or individual is involved, or there is no joining of previously divergent goals, does not mean there is no conspiracy. If we applied the intracorporate conspiracy doctrine to this case, no corporation acting on its own behalf by and through its employees could be found guilty of conspiracy. This result is illogical.

We decline to extend the intracorporate conspiracy doctrine to criminal activity.

### 5. Wharton's Rule

■ Wharton's Rule prevents a conspiracy conviction when an underlying substantive offense requires more than one actor, such as adultery or dueling, and in which "the immediate consequences of the crime rest on the parties themselves rather than on society." *Iannelli v. United States,* 420 U.S. 770, 782–83, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975). Here we have a conspiracy to defraud the government, a violation of 18 U.S.C. § 1001.

■ Hughes argues that a corporation could only violate 18 U.S.C. § 1001 through the efforts of at least two of its employees due to the supervisory and reporting struc-

ture of a corporation. Of course, that is not true: a corporation could be liable under § 1001 for false statements to the government by just one of its employees. A conspiracy arises when more than one of its employees agree to defraud the government.

Moreover, the consequences of government fraud certainly do not rest on the parties themselves rather than society. Government fraud has an adverse effect on the government treasury, the quality of government projects, and in cases such as this one, the safety of individuals utilizing the government goods purchased.

This argument is rejected.

Because we find no merit to any of Hughes's arguments on this point, we affirm the conviction.

## II. *Sentencing*

### A. Standard of Review

■ We review *de novo* the legality of a sentence, *United States v. Heim*, 15 F.3d 830, 831 (9th Cir.1994), while we examine the district court's factual determinations underlying that sentence for clear error. *United States v. Mainard*, 5 F.3d 404, 405 (9th Cir. 1993).

### B. Discussion

#### 1. Findings Under Federal Rule of Criminal Procedure 32

Hughes first contends that, because there was a dispute regarding the amount of the fine to be imposed, the district court was required to make written findings under Federal Rule of Criminal Procedure 32(c)(3)(D). The Rule provides that when a defendant "allege[s] any factual inaccuracy in the presentence investigation report ... the court shall, as to each matter controverted, either make (i) a finding as to the allegation or (ii) ... [state that] the matter controverted will not be taken into account in sentencing." Fed.R.Crim.P. 32(c)(3)(D).

■ Here, the dispute did not concern any factual matter in the presentence report, but rather a contention made by the government in its sentencing memorandum. Thus, no written factual findings were required, and Rule 32(c)(3)(D) does not apply. *See United States v. Rachels*, 820 F.2d 325, 327 (9th Cir.1987). Moreover, Hughes failed to object to the fact that the presentence report did not address the loss to the government and has thus waived any claim that the presentence report was not properly completed.

#### 2. Calculation of Fine

Hughes also contends that the district court improperly calculated the amount of its fine in several ways. The alternative fines provision permits a sentencing court to fine a defendant "not more than the greater of twice the gross gain or twice the gross loss" caused by the crime. Former 18 U.S.C. § 3623(c)(1).[7] This section does not require specific findings of the exact loss. Thus, the only question before us is whether the district court made sufficient findings on the record that the loss to the government was at least one half of $3.5 million, or $1.75 million.

■ In its sentencing memorandum, the government acknowledged that the exact amount of its losses in this case would be impossible to calculate. However, it offered two alternative bases for calculating its pecuniary loss, which provided the court with an adequate foundation for its $3.5 million assessment. The district court made the following finding:

> The other factor in the fine is how much can you precisely calculate? How precise must you be? ... I think the test can probably be by a preponderance of the evidence. How do you calculate the loss? While the government has made a good faith effort to present some data along with declarations of memorandums from various people, it is hard to be precise and I think the government concedes that is difficult for them to be precise on what its loss is. I think there was some loss. I

7. "If the defendant derives pecuniary gain from the offense, or if the offense results in pecuniary loss to another person, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process." 18 U.S.C. § 3623(c)(1) (repealed).

can't be any more precise to the exact loss than can the government in its presentation.

[SER 151.] Under the government's calculations, which Hughes has not shown are incorrect, the court could have fined Hughes anywhere from $17.6 million to $984 million. Although the district court's findings were vague, they were sufficiently supported to uphold the fine imposed.

■ Hughes also argues that the district court erroneously based the fine on the cost of this prosecution. Hughes bases its claim on the district court's comments:

> Again, I guess one of the factors that might be considered in appropriateness of the fine is how much money it cost the government to bring this action. I don't have that figure, but I know it is in the millions to bring this action, but that cannot be the sole basis of the fine.

[SER 158.] The last phrase clarifies that the district court did not in fact *base* the fine on the costs of prosecution, and it is unnecessary to address Hughes's arguments that it lacked notice of or the opportunity to dispute the prosecution costs in violation of its due process rights, and that this burdened its right to plead not guilty.

■ Hughes finally argues that the government is not a "person" under 18 U.S.C. § 3623 because "person" is defined under 1 U.S.C. § 1 as including only "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." However, this statutory definition of "person" is not an exhaustive list: Section 1 provides simply that "person" *includes* the above. We hold that the government is a "person" under 18 U.S.C. § 3623.

The sentence imposed by the district court was not an abuse of discretion.

## CONCLUSION

The conviction and sentence are AFFIRMED.