UNITED STATES of America,
Plaintiff–Appellee,

v.

Graden James MIGUEL, Defendant–
Appellant.

No. 94–10234.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1995.

Decided Feb. 27, 1995.

Philip D. Bogetto, Honolulu, HI, for defendant-appellant.

Louis Bracco (argued) and Mark E. Recktenwald, Asst. U.S. Attys., Honolulu, HI, for plaintiff-appellee.

Before: ALDISERT *, CHOY, and SCHROEDER, Circuit Judges.

ALDISERT, Circuit Judge.

The major question for decision is whether restitution is available as an additional penal-

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

ty under 18 U.S.C. § 3663(a)(1) when a defendant is sentenced to a period of incarceration for a misdemeanor offense. Graden James Miguel originally was sentenced to a period of probation, including restitution, following a conviction for assault by striking, beating or wounding, in violation of 18 U.S.C. § 113(d), a misdemeanor offense. He subsequently violated the terms of probation and, after a hearing, the district court revoked probation, sentenced him to six months imprisonment and let stand the order of restitution. Miguel appeals and argues that under the terms of 18 U.S.C. § 3663(a)(1), where one is sentenced to incarceration for a misdemeanor, the court may not also impose an order of restitution.

In this case of first impression, we are called upon to construe Section 3663(a)(1):

> The court, when sentencing a defendant convicted of an offense under this title … may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense.

Two different interpretations of the phrase "or, in the case of a misdemeanor, in lieu of any other penalty" are urged by the parties. Appellant argues that the statute allows for restitution in misdemeanor cases only when no other penalty is imposed. The Government argues that the penalty of restitution is available as an additional penalty in felony and misdemeanor cases, but may be the only penalty in misdemeanor cases. We are persuaded that the language of the statute is ambiguous, and therefore must consider "[t]he purpose, the subject matter, the context [and] the legislative history" of this statute. *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 313, 98 S.Ct. 584, 587–88, 54 L.Ed.2d 563 (1978) (quoting *United States v. Cooper Corp.*, 312 U.S. 600, 605, 61 S.Ct. 742, 744, 85 L.Ed. 1071 (1941)).

## I.

In November 1992, Appellant Miguel was a member of a six-person crew working at a crater situated on the summit of an extinct volcano on the island of Maui in Haleakala National Park. The workers were assigned to go into the crater, remove barbed wire fencing and perform other tasks. Timothy Gerbracht was the leader of the group. The project required the workers to stay at a cabin near the crater for several days.

After completion of the second day of work, the workers returned to the cabin for the night. Miguel started a fire and heated some water for a shower. Miguel shared the hot water with some but not all members of the crew. Gerbracht asked if he could have a cup of water for tea, and Miguel refused. As Gerbracht left to get water, Miguel yelled at him and challenged him to a fight. Gerbracht refused. Miguel then punched Gerbracht twice without warning. The blows broke Gerbracht's jaw in two places; his lower front teeth were relocated and he was bleeding profusely. The force of the blows also caused Gerbracht to fall against a wall.

In need of immediate medical assistance, Gerbracht was accompanied by two men along a six-mile trail from the work site. The hike lasted three hours, and darkness fell before it was completed. This hike involved an elevation decline of more than one thousand feet, and Gerbracht slipped several times on the trail.

That night, Gerbracht was admitted to Maui Memorial Hospital where the fractures were surgically repaired. Gerbracht was placed under general anesthetic. The inside of his mouth was cut and two metal plates were screwed into his lower front jaw. The doctor wired metal bars around Gerbracht's upper and lower teeth, and inserted rubber bands to close the jaw. The doctor also observed a hematoma and small laceration of recent origin over Gerbracht's left flank and hip region.

Gerbracht remained hospitalized for two days. The metal bars remained on Gerbracht's teeth for six weeks. During this period, Gerbracht missed 45 days of work and lost 15 pounds. Gerbracht required ongoing medical treatment for both the physical and psychological effects of his injuries.

Miguel was indicted for assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(f). The jury acquitted him of that charge but convicted him of the lesser includ-

ed offense of assault by striking, beating or wounding, in violation of 18 U.S.C. § 113(d).

The Pre–Sentence Report found that the Office of Worker's Compensation Program (OWCP) paid a total of $21,300.29 for medical expenses in connection with Gerbracht's injuries, and that Gerbracht had expended $1,476.40 of his own money for treatment of his injuries. The Report recommended that these amounts be included in an award of restitution. Miguel objected to these calculations.

Miguel was sentenced on April 25, 1994. The district court conducted an evidentiary hearing on Miguel's objections to the amounts of restitution. After hearing the evidence, the district court concluded:

> The court finds that the government has established by a preponderance of the evidence that $21,300.29 was paid for medically necessary treatment resulting from an attack on Mr. Gerbracht by the defendant. This was paid out by OWCP, as confirmed by Mona Gonsalves in a telephone conversation with Barbara Kennedy, who is the author of the cover letter to Exhibit 1; and, as further substantiated by the testimony of the agent and the victim. * * *

> The court also finds that Mr. Gerbracht is entitled to the $1,476[.40] in restitution for medical treatment that he needed in this case, for trauma/stress that resulted from the attack on him by the defendant, and that he's established that by a preponderance of the evidence.

ER Tab 5 (Transcr. 4/25/94) at 31–32. The district court also adopted the factual conclusions and statutory analysis of the Pre–Sentence Report, which contained extensive information about Miguel's financial condition and work history.

The court sentenced Miguel to five years probation, with special conditions including (1) five months in community confinement; (2) a substance abuse program; (3) a mental health program; (4) restitution of $21,300.29 to OWCP, and $1,476.40 to Gerbracht, to be paid over the five-year term of probation in a schedule to be determined by the Probation Office.

Miguel later refused to fulfill the terms of his probation. A petition to revoke probation was filed and was heard by the district court on June 10, 1994. The court revoked Miguel's probation, resentenced him to six months imprisonment, and let stand the order for restitution. Miguel objected to the sentence, arguing that Section 3663(a)(1) did not authorize the penalty of restitution in addition to imprisonment for conviction of a misdemeanor. The district court noted the potential ambiguity in the phrase "in lieu of," discussed the possible meanings and requested additional briefing by the parties after sentencing. ER Tab 6 (Transcr. 6/10/94) at 20. It noted that the sentence would stand, subject to subsequent modification after receipt of additional authorities. *Id.* It further notified Miguel of his right to appeal at that point.

Miguel appeals and argues that the district court erred in sentencing him both to a term of imprisonment and to payment of restitution. He also argues that the court abused its discretion in ordering restitution because there was no evidence of his ability to pay and no evidence to support an award of $22,776.69. We agree with the district court's interpretation and application of the statute, and affirm.

Jurisdiction was proper in the trial court based on 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(b), Federal Rules of Appellate Procedure.

We review the legality of a sentence de novo. *United States v. Angelica*, 859 F.2d 1390, 1392 (9th Cir.1988). We review the district court's factual findings regarding the amount of restitution for clear error. *United States v. Smith*, 944 F.2d 618, 623 (9th Cir. 1991), *cert. denied*, 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). We review the court's decision to impose restitution based on those findings for abuse of discretion. *Id.*

## II.

The threshold issue is whether restitution is available as an additional penalty for sentencing a defendant convicted of a misdemeanor.

The present statute emerged in 1986 as an amendment to an original provision contained in the Victim and Witness Protection Act of 1982. The original version of 18 U.S.C. § 3663(a)(1) provided:

> The court, when sentencing a defendant ... may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense.

Pub.L. No. 97–291, 96 Stat. 1248 (codified as amended at 18 U.S.C. §§ 3663–3664). In 1986, Congress passed the Criminal Law and Procedure Technical Amendments Act, adding the following italicized language to the statute:

> ... may order, in addition to or, *in the case of a misdemeanor*, in lieu of any other penalty ...

Pub.L. No. 99–646, 100 Stat. 3592 (codified at 18 U.S.C. § 3663).

### A.

We believe that the proper interpretation of this statute lies in the examination of the purpose of the 1982 original statute and of the purpose of the 1986 amendment. Guiding us in our inquiry, two noted legal scholars have stated:

> In interpreting a statute a court should: 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.[1]

In addressing a similar problem, speaking through Justice Scalia, the Supreme Court said that "[t]he answer is to be found by examining the purpose of the [statute and] the entirety of its text." *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988).

### B.

In enacting the restitution provisions of the Victim and Witness Protection Act of 1982, Congress attempted to restore restitution to its proper place in federal criminal law by expanding the scope of the federal restitution sanction, by encouraging its increased imposition, and by fostering improved monitoring and enforcement procedures. S.Rep. No. 532, 97th Cong., 2d Sess. 30–33, *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536–39.

Prior to the Act, victim restitution was authorized under the federal criminal statutes only as an optional condition to probation. The Act authorized federal courts, for the first time, to order payment of restitution independently of a sentence of probation. The purpose of the Act was to compensate victims of crime:

> The premise of the section is that the court in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make good[ ], to the degree possible, the harm he has caused his victim. * * *
>
> The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the sanctioning power of society does to punish its wrongdoers, it should also insure [sic] that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being.

*Id.* at 30, *reprinted in* 1982 U.S.C.C.A.N. 2536. The purpose of the 1982 Act is served equally by requiring criminals of felonies and misdemeanors to compensate the victims of their crimes. The Act also clearly indicates that restitution is a penalty available to sentencing courts regardless of other criminal penalties that may be imposed.

### C.

The 1986 amendment adding the words, "in the case of a misdemeanor" to the 1982 Act was part of the "Criminal Law and Procedure Technical Amendments Act of

---

1. Henry Hart and Albert Sacks, *The Legal Process: Basic Problems in the Making and Application of Law* 1411 (Cambridge Tent. ed. 1958).

1986." This Act made only "necessary technical and other minor changes to sections of title[ ] 18 ... All of the amendments contained in the bill are uncontroversial." H.Rep. No. 99–797, 99th Cong., 2d Sess. 1, 16, *reprinted in* 1986 U.S.C.C.A.N. 6138, 6139. There is no dispute that, prior to this amendment, restitution was available as an additional penalty for sentencing of both felonies and misdemeanors; federal law authorized federal courts to order restitution "in addition to or in lieu of any other criminal penalty." Appellant argues that the 1986 technical amendment forces sentencing courts either to compensate the victims of misdemeanor crimes through restitution or to punish the perpetrators of such crimes with other penalties, but not both. Of course, such an amendment would have been neither "technical" nor "uncontroversial."

Legislative history instead suggests that the amendment was passed to retain restitution as an additional penalty for sentencing of both felonies and misdemeanors, and to clarify that restitution was available "in lieu of" other penalties only in cases involving misdemeanors. Indeed, the amendment was the result of a compromise between competing Senate and House Bills. Section 15(1) of S.1236, 99th Cong., 2nd Sess. (1986), would have stricken the "in lieu of" language, so that restitution would be available *only* as an additional penalty. Section 20 of H.R. 5241, 99th Cong., 2nd Sess. (1986), would have permitted restitution to be ordered in lieu of other criminal penalties if the offense was a misdemeanor or felony punishable for no longer than three years. The amendment "compromise[d] the difference between the bills by *authorizing* restitution to be ordered in lieu of any other criminal penalty if the offense is a misdemeanor." 132 Cong.Rec. H12291–01, 99th Cong., 2nd Sess. (1986) (remarks of Mr. Berman) (emphasis added). Neither the bills nor the compromise suggests that Congress intended to force sentencing courts to choose between restitution and other penalties.

### D.

Appellant has failed to demonstrate that, in enacting the 1986 technical amendment,

Congress intended to abandon the goal of the 1982 legislation. To adopt the interpretation advanced by Appellant would be to construe the technical amendment in a way that directly undercuts the clear purpose of the 1982 statute. It would restrict, rather than expand, the scope of the penalty of restitution. *See Brooks v. Donovan*, 699 F.2d 1010, 1011 (9th Cir.1983) (the "court must look beyond the express language of a statute where a literal interpretation 'would thwart the purpose of the over-all statutory scheme or lead to an absurd result.'") (quotation omitted).

 We also reject Appellant's argument that because the language is ambiguous, the rule of lenity compels a reversal of the sentence. *See United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir.1991). We recently reaffirmed the Supreme Court's position that "[t]his maxim of statutory construction ... cannot dictate an implausible interpretation of a statute." *United States v. Hughes Aircraft Co., Inc.*, 20 F.3d 974, 979 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994) (quoting *Taylor v. United States*, 495 U.S. 575, 596, 110 S.Ct. 2143, 2157, 109 L.Ed.2d 607 (1990)). Moreover, the rule of lenity is "not to be used in complete disregard of the purpose of the legislature." *Perrin v. United States*, 444 U.S. 37, 49 n. 13, 100 S.Ct. 311, 317, n. 13, 62 L.Ed.2d 199 (1979) (*quoting United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116–17, 55 L.Ed.2d 349 (1978)). Because Appellant's interpretation would undermine the purpose of the statute, the rule of lenity does not apply. *See Hughes Aircraft*, 20 F.3d at 979.

### III.

 Appellant also argues that the district court abused its discretion in ordering restitution because there was no evidence of his ability to pay. The district court had authority to impose restitution because it adequately considered the financial resources, financial needs and earning ability of the defendant. Section 3664(a) merely provides that the court "shall consider" a variety of factors:

The court, in determining whether to order restitution under section 3663 of this title

and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate. 18 U.S.C. § 3664(a). "[R]equiring the district court to consider certain factors grants the court broad discretion to determine the type and amount of evidence it deems relevant." *United States v. Cannizzaro*, 871 F.2d 809, 811 (9th Cir.), *cert. denied*, 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989). *See also United States v. Mills*, 991 F.2d 609, 611 (9th Cir.1993) ("There must ... be some indication that the judge gave thought to the relevant information.").

■ Here, the district court had before it information regarding Miguel's previous earnings record and work history, as well as information regarding his current family responsibilities, earnings, assets and liabilities. The district court not only considered these factors, it made specific findings. *See Cannizzaro*, 871 F.2d at 810–11 (a court is not required to make factual findings). The court found that Miguel was a high school graduate with approximately one year of community college, and that he held jobs in the construction, landscaping, delivery and glass industries for approximately six years, with only brief periods of unemployment.

■ There was no abuse of discretion provided the amount of restitution was based on "some evidence the defendant may be able to pay the amount fixed when required to do so." *United States v. Ramilo*, 986 F.2d 333, 335 (9th Cir.1993). Indigency and a present inability to pay do not preclude imposition of restitution. *United States v. Jackson*, 982 F.2d 1279, 1284–85 (9th Cir.1992). On the basis of Miguel's past employment, the wages he had received and the fact that he would be able to pay this restitution over a five-year period, the district court found that he had the capacity to make restitution in the amount of $22,776.69. The record fully satisfies *Ramilo's* requirement that there be "some evidence" that Miguel "may be able to pay restitution in the amount ordered in the future." *Ramilo*, 986 F.2d at 336; *see also United States v. Smith*, 944 F.2d 618, 624 (9th Cir.1991), *cert. denied*, 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

■ The district court had broad discretion in ordering restitution, and the order followed the statutory framework. *See United States v. Angelica*, 859 F.2d 1390, 1394 (9th Cir.1988). Accordingly, the district court did not abuse its discretion in ordering Miguel to make restitution.

## IV.

■ Miguel further argues that there was insufficient evidence to support the amount of restitution ordered by the district court. Section 3663 provides that the district court may order restitution in an amount tied to the actual losses the victims suffered. *United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir.1989), *cert. denied*, 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990). Appellant challenges (i) the accuracy and legitimacy of the OWCP charges; (ii) the reasonableness and necessity of Gerbracht's payments for counselling; and (iii) the cause of the back injuries. The district court conducted an evidentiary hearing to hear Miguel's objections and made findings as to the amount of restitution.

■ First, the district court did not clearly err in finding that the OWCP incurred a $21,300.29 expense. Upon review of a Government exhibit that was corroborated by the sworn testimony of the probation officer, the Park Ranger and the victim, the court concluded that the expenses were reasonably required for treatment of the injuries caused by Miguel. The court did not abuse its discretion in ordering restitution for the medical expenses of Miguel paid by the OWCP.

■ Second, the district court did not clearly err in finding that Mr. Gerbracht incurred a $1,440 expense for counselling. Upon hearing him testify that he needed the counselling to help him cope with the psychological consequences of the assault, a condition that was diagnosed as a post traumatic stress condition, the court concluded that the

counselling was reasonable and justified. The court did not abuse its discretion in ordering restitution for this amount.

█ Finally, the district court did not clearly err in finding that Mr. Gerbracht and OWCP incurred expenses for chiropractic treatments of Mr. Gerbracht's back. Upon hearing testimony that (i) Mr. Gerbracht bounced off the wall when hit by Miguel, (ii) Mr. Gerbracht slipped several times on the hike out of the park,[2] (iii) the treating physician observed a recent bruise on Mr. Gerbracht's hip; and (iv) Mr. Gerbracht's neck was immobile and his back hurt upon discharge from the hospital, the court did not abuse its discretion in ordering restitution for amounts attributed to Mr. Gerbracht's back pain.

## V.

The Victim and Witness Protection Act makes restitution available as an additional penalty for the commission of a misdemeanor crime. The district court thus was authorized to sentence Miguel both to serve a prison term and to make restitution. The district court properly considered Miguel's ability to pay, and thus did not abuse its discretion in ordering restitution. There also was no abuse of discretion in setting the amount of restitution, because the amounts of $21,300.29 to the OWCP and $1,476.40 to Mr. Gerbracht were adequately supported by the evidence. The sentence imposed by the district court is AFFIRMED.

---

**2.** Appellant suggests that injuries incurred on the hike from the work site are a possible *alternate* cause of Gerbracht's back injuries. To the contrary, Miguel is accountable for injuries incurred on that hike, because they would not have occurred absent the assault. *See United States v. Keith*, 754 F.2d 1388, 1393 (9th Cir.) (restitution ordered where "possible intervening cause . . . is directly related to the assault"), *cert. denied*, 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985); *United States v. Spinney*, 795 F.2d 1410, 1417 (9th Cir.1986) ("a restitution order is authorized if the defendant created the circumstances under which the harm or loss occurred").