UNITED STATES of America, Plaintiff–Appellee,

v.

Rafael VALENCIA–ANDRADE, Defendant–Appellant.

No. 95–50093.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 14, 1995.*

Decided Dec. 27, 1995.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Before: ALDISERT,** ALARCON, and RYMER, Circuit Judges.

ALARCON, Circuit Judge:

Rafael Andrade–Valencia[1] appeals from the sentence imposed by the district court following his guilty plea to possession of methamphetamine with intent to distribute. The district court sentenced Andrade–Valencia to the statutory mandatory minimum term of imprisonment of 120 months. He seeks reversal on the ground that the district court erred in ruling that it lacked the authority to impose a sentence below the mandatory minimum, notwithstanding its finding that his criminal history category, based on two convictions for driving with a suspended license, was over-represented. We affirm because 18 U.S.C. § 3553(f) expressly precludes a downward departure from the guidelines if the defendant has more than one criminal history point.

I.

On July 22, 1994, Andrade–Valencia was caught attempting to smuggle methamphetamine into the United States. The gross weight of the methamphetamine and its packaging was 15.67 kilograms. Andrade–Valencia pled guilty to possession of methamphetamine, a Schedule II controlled substance, with intent to distribute, on November 4, 1992. This offense carries a mandatory minimum term of ten years to life in prison. 21 U.S.C. § 841(b)(1)(A)(viii).

Andrade–Valencia's prior criminal history consists solely of two convictions for driving with a suspended license. He was sentenced to a term of two years probation for the first conviction. For the second conviction, he was sentenced to a term of 18 months probation. Pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 4A1.1(c), 4A1.2(c)(1), Andrade–Valencia was assigned

Michael L. Crowley, San Diego, California, for defendant-appellant.

Mary A. Schneider, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

---

** Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. During the sentencing proceedings, Valencia–Andrade informed the district court that his last name was Andrade–Valencia.

two criminal history points.[2] This placed Andrade–Valencia in criminal history Category II. *See* U.S.S.G. Ch. 5 Pt. A (listing criminal history categories and the number of criminal history points encompassed by each category—Category II is reserved for persons with two or three criminal history points).

A person whose prior record places him or her in criminal history Category II is subject to a guideline range of 121–151 months for an offense level of 31. The district court granted Andrade–Valencia a downward departure to criminal history Category I pursuant to U.S.S.G. § 4A1.3.[3] The court's downward departure reduced the applicable guideline range to 108 to 135 months.

In explaining its reasons for departing downward, the district court commented as follows:

> I want the record to be very clear that I feel—my interpretation of the statute is that I cannot, but if it were not for the minimum mandatory I would have given the defendant 108 months at the low end of the guideline range at a level 31, because I find that this is the type of person that should benefit from the safety valve, and that his criminal history only consists of traffic violations.
>
> So I feel very strongly that his criminal history is less serious than what is reflected in the number of points and the criminal history category in which he finds himself; however, because I feel that the government's interpretation is correct, and I agree that that is (sic) what Congress intended was to look at the criminal history points, I must impose the 120–month minimum mandatory.

**2.** Andrade–Valencia received two criminal history points because he was twice convicted for driving with a suspended license. The sentencing guidelines provide that a person who receives a sentence of probation of at least one year for "[d]riving without a license" will receive one criminal history point. U.S.S.G. § 4A1.2(c)(1). A sentencing court must "[a]dd one point for each prior sentence...." U.S.S.G. § 4A1.1(c).

**3.** Section 4A1.3 provides in pertinent part: There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of

## II.

Andrade–Valencia states that the "lone issue before this court is whether the 'safety valve' provisions of the VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1984 (18 U.S.C. § 3553) (hereinafter 'ACT') should apply to [him]." He appears to argue that when the district court grants a downward departure from criminal history Category II to Category I, because the defendant's criminal history category over-represents the seriousness of his prior criminal conduct, the "safety valve" provision of section 3553(f) must be applied. We disagree.

■ We review *de novo* a district court's interpretation and application of a statute. *United States v. Ripinsky,* 20 F.3d 359, 361 (9th Cir.1994).

## III.

■ Congress enacted the sentencing guidelines in order to enhance the ability of the criminal justice system to combat crime through an effective, fair sentencing system. U.S.S.G. Ch. 1 Pt. A(3). The sentencing guidelines provide standard sentencing ranges in order to "narrow[ ] the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G Ch. 1 Pt. A(3). The sentencing guidelines permit a court to depart from the guideline range applicable to the defendant only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. Ch. 1 Pt. A(4)(b).

a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

The sentencing guidelines provide for the assignment of criminal history points for prior criminal convictions. U.S.S.G. §§ 4A1.1, 4A1.2. The number of criminal history points assigned to a defendant determine his or her criminal history category. U.S.S.G. Ch. 5 Pt. A. The sentencing guidelines also assign a base criminal offense level to different criminal offenses. U.S.S.G. Ch. 2. The criminal history category is then applied to the criminal offense level to determine the appropriate range of the term of imprisonment that may be imposed. U.S.S.G. Ch. 5 Pt. A.

The sentencing guidelines permit a district court to depart downward from the defendant's criminal history category if it "significantly over-represents the seriousness of a defendant's criminal history." U.S.S.G. § 4A1.3. A downward departure in a defendant's criminal history category permits the court to apply a more lenient sentencing range than would otherwise be applicable. U.S.S.G. Ch. 5 Pt. A.

In 21 U.S.C. § 841, Congress prescribed mandatory minimum sentences for certain crimes including possession of methamphetamine with intent to distribute. When applicable, the mandatory minimum penalty provisions of section 841 trump the relevant sentencing guideline range. Section 5G1.1(b) provides as follows:

> (b) Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.

In 1994, Congress authorized the courts to apply a guideline range that is below the statutory mandatory minimum sentence under certain clearly specified circumstances. 18 U.S.C. § 3553(f).[4] Before a court is authorized to depart from the mandatory minimum provisions of 21 U.S.C. §§ 841, 844, and 846, however, it must find *inter alia* that "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1).

Andrade–Valencia argues that because "the obvious intent of Congress was to mitigate the harsh results of mandatory minimum sentences when a person has virtually no criminal history. . . . this court should find that when the criminal history is over represented (sic), the allowance should be made." Andrade–Valencia asserts further that the silence of the sentencing guidelines and Congress regarding whether a court can depart from a mandatory minimum sentence, if the court finds the criminal history category is over-represented, renders section 3553(f) ambiguous.

Andrade–Valencia asks this court to apply the statutory construction analysis we employed in *United States v. Miguel,* 49 F.3d 505 (9th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2628, 132 L.Ed.2d 868 (1995)

4. 18 U.S.C. § 3553(f) provides as follows: Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 961, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(1) **the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;**

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) (emphasis added).

to carry out Congress' intent to give district courts the discretion to impose a sentence below the mandatory minimum for minor offenders. Andrade–Valencia's reliance on our decision in *Miguel* is misplaced. In *Miguel*, we began our discussion by stating: "We are persuaded that the language of the statute is ambiguous, and therefore must consider '[t]he purpose, the subject matter, the context [and] the legislative history' of this statute." *Id.* at 507 (citation omitted). Section 3553(f) is not ambiguous. It explicitly precludes departure from the mandatory minimum provisions of 21 U.S.C. § 841 if the record shows that a defendant has more than one criminal history point.

■■■ Our duty in applying an unambiguous statute is clear. The Supreme Court has instructed that, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991). We may ignore the plain words used by Congress only "in rare cases [where] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). The trial court's interpretation of section 841 is not demonstrably at odds with the intention of Congress.

In 1988, Congress determined that the sentencing guidelines shall not apply to certain crimes if the range of punishment falls below a minimum term of years. 21 U.S.C. § 841(b)(1)(A). In 1994, Congress again expressed its intention that the mandatory minimum sentencing provisions of 21 U.S.C. §§ 841, 844, and 846 must be applied to persons who have more than one criminal history point.

Andrade–Valencia asks us to construe the statute to permit relief from the harsh results of applying the mandatory minimum where the criminal history consists of two minor offenses and the defendant paid his fines and successfully completed his probationary terms. We have no constitutional authority to adopt a new exception to the mandatory minimum penalty requirements of 21 U.S.C. §§ 841, 844, and 846. The Supreme Court instructed federal courts to resist the temptation to extend the reach of a statute beyond the express intention of Congress, to avoid a harsh result, in the following words:

> Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. *Monson v. Chester*, 22 Pick. 385, 387. It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts.

*Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50–51, 75 L.Ed. 156 (1930). Assuming arguendo that there is merit to Andrade–Valencia's argument that a mandatory minimum sentence should not be imposed where the criminal history category over-represents the seriousness of a defendant's prior criminal history, only Congress can provide a remedy.

Because section 3553(f) expressly precludes the courts from sentencing persons convicted of possession of methamphetamine with intent to distribute if they have more than one criminal history point to a guideline range that is below the mandatory minimum, we hold that the sentence imposed by the district court was compelled by 21 U.S.C. § 841(b)(1)(A)(viii).

■■■ We also reject Andrade–Valencia's suggestion that we should apply the rule of lenity in this case. The rule of lenity is

inapplicable to an unambiguous statute. The rule of lenity "serves as an aid for resolving an ambiguity; it is not to be used to beget one." *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961).

AFFIRMED.